[No. D014094. Fourth Dist., Div. One. Feb. 24, 1993.]

JULIUS J. PEARL, Plaintiff and Appellant, v.
GENERAL MOTORS ACCEPTANCE CORPORATION, Defendant and
Respondant.

**COUNSEL**

Duckor & Spradling, Scott L. Metzger, Thomas R. Darton and Kirk Miller for Plaintiff and Appellant.

Manning, Leaver, Bruder & Berberich, Paul J. Najar, Penny L. Reeves and Halbert B. Rasmussen for Defendant and Respondent.

**OPINION**

**WORK, Acting P. J.**—Julius J. Pearl appeals a summary judgment in favor of General Motors Acceptance Corporation (GMAC) dismissing his claim against GMAC seeking declaratory relief regarding a pledge of stock he

made to GMAC. Specifically, he asked the court to confirm that his purported termination of the pledge agreement was effective to preclude his responsibility for future loans made by GMAC to Palomar Truck Corporation and Castle Motors Inc. (jointly, Palomar) under a revolving credit arrangement known as a "flooring" line of credit. Pearl contends on appeal his purported termination of the pledge agreement was effective, because Civil Code[1] section 2815 applies to pledge agreements and allows him to revoke the pledge agreement as to future transactions. He further contends his section 2815 rights were not waived by the language of the pledge agreement and, even if there was a waiver, such waiver would be void as against public policy. Since we agree section 2815 applies to the pledge agreement and conclude the language in the agreement did not effect a waiver of his section 2815 rights, we reverse the summary judgment and remand the matter to the trial court with directions to enter judgment for Pearl.

I

On July 13, 1987, Palomar sent a letter to GMAC requesting revolving lines of credit totaling $3.8 million to finance its purchases of vehicle inventory, which lines of credit are referred to as "flooring" lines or plans. GMAC agreed to extend such credit, provided, in part, a $1 million letter of credit be obtained and Pearl, as a 25 percent shareholder, and another shareholder executed guaranties to secure the flooring line of credit. The guaranty drafted by GMAC and signed by Pearl stated it was a continuing guaranty that would remain in full force and effect until GMAC received a notice of termination from Pearl.

Since the cost of obtaining a letter of credit was found to be unreasonably high, Palomar requested and GMAC agreed to accept in substitution for it the pledge of stock of similar value. GMAC drafted a pledge agreement providing for the pledge by Pearl of 20,000 shares of the Price Company stock. Pearl executed and delivered the pledge agreement along with certificates for the 20,000 shares. The pledge agreement secured all obligations of Palomar to GMAC, either currently existing or created later, including the flooring line of credit. Section 9.1 of the agreement contains provisions dealing with termination of the pledge which are discussed in detail below.

Only a few weeks after executing the pledge agreement, Pearl delivered to GMAC a letter dated September 14, 1987, which stated it was a notice of

---

[1] All statutory references are to the Civil Code unless otherwise specified.

termination of all documents signed by him, including the pledge agreement and the continuing guaranty. Pearl apparently desired to terminate these agreements as to future advances, because he had become aware of Palomar's dire financial condition and wanted to minimize his personal financial risk. GMAC acknowledged Pearl's termination of the guaranty as to future advances, but it advised him the pledge agreement continued in effect.

Pearl later filed a complaint seeking a declaratory judgment against GMAC that his letter effected a valid termination of the pledge agreement. After a hearing of GMAC's motion, the court ordered summary judgment in favor of GMAC. The judgment was entered, and GMAC was awarded its costs and attorney fees.

## II

The purpose of summary judgment is "to discover whether the parties possess evidence requiring the fact-weighing procedures of a trial." (*Appalachian Ins. Co.* v. *McDonnell Douglas Corp.* (1989) 214 Cal.App.3d 1, 10 [262 Cal.Rptr. 716].) Code of Civil Procedure section 437c, subdivision (c), provides a motion for summary judgment must be granted "if all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." As a reviewing court, we conduct a de novo review to determine whether there are any genuine issues of material fact. (*Appalachian Ins. Co.* v. *McDonnell Douglas Corp., supra,* 214 Cal.App.3d at p. 11.) Also, an appellate court in reviewing a grant of summary judgment "must make its own independent determination of the construction and effect of the papers submitted [citation], and the validity of the ruling is reviewable irrespective of the reasons stated." (*Preis* v. *American Indemnity Co.* (1990) 220 Cal.App.3d 752, 757 [269 Cal.Rptr. 617].) Although we must strictly construe the moving party's papers and liberally construe the opposing party's papers, the opposing party "has the burden of showing that triable issues of fact exist." (*Chern* v. *Bank of America* (1976) 15 Cal.3d 866, 873 [127 Cal.Rptr. 110, 544 P.2d 1310].) Finally, an appellate court must resolve all doubts in favor of the party opposing the judgment. (*Appalachian Ins. Co.* v. *McDonnell Douglas Corp., supra,* 214 Cal.App.3d at p. 11.)

## III

We first discuss Pearl's assertion, which GMAC apparently does not dispute, that section 2815 applies to pledge agreements executed by non-debtors. Section 2815 provides for the revocation of a "continuing guaranty" at any time by the "guarantor," stating:

"A continuing guaranty may be revoked at any time by the guarantor, in respect to future transactions, unless there is a continuing consideration as to such transactions which he does not renounce." The definition of a "guaranty" and a "guarantor" is derived from section 2787, which states in relevant part: "A surety or *guarantor is one who promises to answer for the debt,* default, or miscarriage *of another, or hypothecates property as security therefor.* Guaranties of collection and continuing guaranties are forms of suretyship obligations, and except in so far as necessary in order to give effect to provisions specifically relating thereto, shall be subject to all provisions of law relating to suretyships in general." (Italics added.) Since under the pledge agreement Pearl "hypothecated," or pledged, his stock as security for the debts of Palomar, pursuant to the express terms of section 2787, Pearl is a "guarantor" and the pledge agreement is implicitly a "guaranty" for purposes of the suretyship provisions of the Civil Code, including section 2815. (See, e.g., *Bridge* v. *Connecticut Mut. Life Ins. Co.* (1914) 167 Cal. 774, 781-783 [141 P. 375] [pledge of insurance policy by wife to secure husband's debt placed wife in position of surety].) Section 2814 defines a "continuing guaranty" as a "guaranty relating to a future liability of the principal, under successive transactions, which either continue his liability or from time to time renew it after it has been satisfied . . . ." Thus, since the pledge agreement secured a revolving line of credit for Palomar which would involve repayments and future extensions of credit, the pledge agreement must be considered a "continuing guaranty" for purposes of sections 2814 and 2815. Absent a possible waiver or other considerations, section 2815 then would allow Pearl to revoke the pledge agreement at any time as to future extensions of credit.

## IV

We next address whether section 2815 revocation rights may be waived, and, if so, whether the pledge agreement effectively waived Pearl's section 2815 rights. GMAC asserts, and Pearl denies, that section 2815 rights may be waived and that the pledge agreement effected such a waiver.

### A.

At the outset, we note the issue of whether section 2815 rights may be waived appears to be one of first impression. GMAC asserts that all Civil Code suretyship rights may be waived, citing dicta from a case which states:

"The protections of the Civil Code pertaining to surety contracts may be waived." (*Canadian Community Bank* v. *Ascher Findley Co.* (1991) 229 Cal.App.3d 1139, 1154 [280 Cal.Rptr. 521].) However, the court in that case dealt only with waivers of sections 2845, 2847, and 2849. (229 Cal.App.3d at pp. 1153-1154.) Thus, we are not compelled to follow its generalization as to waivers of all suretyship protections, such as section 2815.

We acknowledge, however, a number of court decisions have allowed waivers of certain statutory protections for sureties. Sections 2845 and 2849 have often been found to have been waived by language contained in documents. (See, e.g., *Brunswick Corp.* v. *Hays* (1971) 16 Cal.App.3d 134, 138 [93 Cal.Rptr. 635]; *Wiener* v. *Van Winkle* (1969) 273 Cal.App.2d 774, 786-787 [78 Cal.Rptr. 761]; *Engelman* v. *Bookasta* (1968) 264 Cal.App.2d 915, 916-917 [71 Cal.Rptr. 120]; *American Guaranty Corp.* v. *Stoody* (1964) 230 Cal.App.2d 390, 396 [41 Cal.Rptr. 69].) Sections 2845 and 2849 generally provide a surety with the right to require a creditor to proceed first against the debtor or to pursue any other remedy the surety could not pursue and also entitle the surety to the benefit of all security held by the creditor for performance of the debtor's obligation. These rights were not viewed by the courts as so founded in public policy as to preclude their waiver by the sureties. (See, e.g., *Wiener* v. *Van Winkle*, *supra*, 273 Cal.App.2d at p. 787; *American Guaranty Corp.* v. *Stoody*, *supra*, 230 Cal.App.2d at pp. 395-396.) Another court has recognized the waiver by a surety of the provisions of sections 2819 and 2845. (*Union Bank* v. *Ross* (1976) 54 Cal.App.3d 290, 294-295 [126 Cal.Rptr. 646].) Section 2819 generally provides for release of a surety if the creditor, without the surety's consent, alters the original obligation of the debtor or impairs the rights or remedies against such debtor. In all of the above cases, the documents included language that the courts found sufficiently specific so as to express an intention to waive the particular statutory protections.

Two provisions in the Civil Code appear to allow waivers of statutory provisions, provided such waivers are not against public policy. Section 3268 states: "Except where it is otherwise declared, the *provisions of the foregoing titles* of this part, in respect to the rights and obligations of parties to contracts, are subordinate to the intention of the parties, when ascertained in the manner prescribed by the chapter on the interpretation of contracts; *and the benefit thereof may be waived by any party entitled thereto, unless such waiver would be against public policy.*" (Italics added.) Similarly, section 3513 provides: "Any one may waive the advantage of a law intended

solely for his benefit. But a law established for a public reason cannot be contravened by a private agreement." Upon the basis of these two statutes and the reasoning of the cases cited above, it appears the benefit of section 2815 may be waived unless it is founded upon public policy.

Section 2815 essentially allows a guarantor to revoke his continuing guaranty at any time in order to preclude his liability for any future additional advances to the debtor. By its terms, the legislative intent implicitly underlying section 2815 was to protect guarantors from seemingly unending continuing guaranties of loans to debtors which frequently were beyond the control of the guarantors. Section 2815 allows a guarantor to effectively limit his potential losses by "freezing" his liability for only those advances made up to the time of his revocation. Thus, if a guarantor learns that the financial condition of the debtor has drastically changed for the worse, he can exercise his right to revoke his continuing guaranty under section 2815.

Although such a right is a very important one for a guarantor to possess, we conclude it is not so important to the public interest that it cannot be waived. Pearl fails to prove the public welfare would be adversely affected by allowing waivers of section 2815. The prevailing public interest is the rule that parties should generally be free to contract with each other upon such terms as they agree. Thus, if two contracting parties desire to waive the provisions of section 2815, they generally should be free to do so. If a guarantor desires to retain his section 2815 right to revoke a continuing guaranty at any time, he can do so by refusing to execute any document purporting to waive such right. On the other hand, if the guarantor knowingly waives such right as being relatively unimportant to him or her, such waiver should not be prohibited by an overprotective court interpretation of section 2815 which could hinder a needy borrower's access to credit.

Further, we specifically note the Legislature has not adopted any statute prohibiting the waiver of section 2815. If it intended section 2815 to be nonwaivable for reasons of public policy, the Legislature could have adopted a statute similar to section 2953 which expressly prohibits waivers by borrowers of rights under sections 2924, 2924b, and 2924c and Code of Civil Procedure sections 580a and 726.[2] Accordingly, we conclude the rights afforded guarantors by section 2815 may be waived and such waiver is not in contravention of any public policy.

[2]Section 2953 states in relevant part: "Any express agreement made or entered into by a borrower at the time of or in connection with the making of or renewing of any loan secured by a deed of trust, mortgage or other instrument creating a lien on real property, whereby the borrower agrees to waive the rights, or privileges conferred upon him by Sections 2924,

## B.

■ Having concluded section 2815 rights may be waived, we now address the question of whether the terms of the pledge agreement effected a waiver of Pearl's section 2815 revocation rights. Preliminarily, we note the pledge agreement is clear on its face that its terms constitute a total incorporation of the agreement between Pearl and GMAC as to the pledge of the stock. Section 11.1 of the agreement states: "This Agreement constitutes the entire agreement between the parties hereto, and supersedes any and all negotiations, representations, oral or written, prior hereto, and it is expressly agreed and understood that there are no representations of any kind, oral or written[,] by either of the parties hereto, or the agents or representatives of either [of] the parties hereto, except as set forth herein, and this Agreement may not be modified, waived or changed in any respect except in writing." As a result, the separate provisions of Pearl's continuing guaranty, or the possible provisions of the letter of credit which was originally anticipated, are not combined with and do not apply to the pledge agreement. The pledge agreement must be interpreted on its own as a totally integrated document.

In interpreting the pledge agreement to determine whether it includes a waiver of Pearl's section 2815 rights, we find only one provision which could possibly effect such a waiver. Section 9.1 of the agreement states: "*This Agreement* shall create a continuing security interest in the pledged collateral and *shall remain in full force and effect until all obligations owing to Pledgee by Borrowers have been satisfied* including without limitation all obligations under flooring lines of credit. *Upon satisfaction of all such obligations, this Agreement shall terminate* at which time the Pledgee shall release, reassign and redeliver to the pledgor all of the pledged shares that have not been sold or otherwise applied by the Pledgee pursuant to the terms of this Agreement and all remaining rights received by Pledgee as a result of holding said pledged shares." (Italics added.) On its face, this provision makes no mention of section 2815 by name. (Cf. *Mariners Sav. & Loan Assn.* v. *Neil* (1971) 22 Cal.App.3d 232, 236 [99 Cal.Rptr. 238, 49 A.L.R.3d 549] [explicit waivers naming sections 580 and 726 of the Code of Civil Procedure were effective], superseded by statute (on other grounds) as stated in *Torrey Pines Bank* v. *Hoffman* (1991) 231 Cal.App.3d 308, 321 [282

2924b, 2924c of the Civil Code or by Sections 580a or 726 of the Code of Civil Procedure, shall be void and of no effect."

Cal.Rptr. 354].) Further, it does not specifically state Pearl may not revoke the continuing security interest at any time as to future advances made by GMAC to Palomar. (Cf. *Union Bank* v. *Gradsky* (1968) 265 Cal.App.2d 40, 48 [71 Cal.Rptr. 64] [no explicit waiver by language found of guarantor's rights under Code of Civil Procedure section 580d].) Such a specific provision presumably would have effectively waived the rights afforded Pearl by section 2815. We are left then only with the possibility that section 9.1 of the agreement implicitly effects a waiver of section 2815 rights by reason of its purported exclusive means for termination or revocation of the agreement. Such a conclusion is not abundantly clear. The second sentence of section 9.1 deals with the release of the pledged shares after Palomar's obligations have been satisfied, so it does not directly pertain to or govern the means by which the agreement can be terminated or revoked. Only the first sentence deals with the means for termination by stating the agreement "shall remain in full force and effect until all obligations owing to Pledgee by Borrowers have been satisfied." It is unclear whether this provision implicitly precludes other means of termination or revocation of the agreement, such as pursuant to section 2815. It is possible this provision could mean the pledge remains effective as to all advances made to Palomar prior to any termination by Pearl under section 2815 or, if none, upon full satisfaction of Palomar's obligations. Thus, a section 2815 revocation would not technically "terminate" the entire pledge agreement, since it would continue in full force and effect as to all advances made to Palomar before such revocation.

Further, in light of the important rights granted guarantors by section 2815, we conclude any waiver language must be clear, so that a guarantor knows upon execution of the document that he or she will not have any right to revoke the guaranty as to any future advances and, thus, that the guarantor may essentially have no control over his or her ultimate responsibility for the debtor's borrowings. As to statutory antideficiency protections, we note a court found language in a guaranty waiving "all suretyship defenses and defenses in the nature thereof" was insufficient to waive a guarantor's rights under the antideficiency provisions of Code of Civil Procedure section 580d. (*Indusco Management Corp.* v. *Robertson* (1974) 40 Cal.App.3d 456, 461-462 [114 Cal.Rptr. 47].) The provisions of section 9.1 of the agreement do not affirmatively establish an intent to waive the benefits of section 2815. To the extent the agreement is ambiguous, it must be interpreted most strongly against GMAC, the party which drafted the agreement. (§ 1654; *Coutin* v. *Nessanbaum* (1971) 17 Cal.App.3d 156, 162 [94 Cal.Rptr. 453].) As the *Gradsky* court stated, "[i]n absence of an explicit waiver, we shall not strain the instrument to find that waiver by implication." (*Union Bank* v. *Gradsky, supra,* 265 Cal.App.2d at p. 48.) Accordingly, we conclude Pearl's section 2815 rights were not waived by the language contained in the pledge

agreement, and his termination letter effectively revoked his responsibility under the agreement for advances made to Palomar after GMAC received it.

V

■ Finally, GMAC meritlessly contends section 2815 does not apply to the pledge agreement, because the California Uniform Commercial Code somehow precludes its application. GMAC correctly notes the pledge agreement, creating a security interest in personal property (i.e., stock), is subject to the provisions of divisions 8 and 9 of the Uniform Commercial Code. However, its attempt to establish the Uniform Commercial Code as the exclusive source of applicable statutory provisions fails.

California Uniform Commercial Code section 1103 expressly states: "Unless displaced by the particular provisions of this code, the principles of law and equity, including the law merchant and the law relative to capacity to contract, principal and agent, estoppel, fraud, misrepresentation, duress, coercion, mistake, bankruptcy, or other validating or invalidating cause shall supplement its provisions." The official comment to this section states "all supplemental bodies of law" shall continue to apply, "except insofar as they are explicitly displaced by this Act." We find no provision of the Uniform Commercial Code which would explicitly displace section 2815.

GMAC points to California Uniform Commercial Code section 9201 which sets forth the rule that security agreements are to be enforced according to their terms, but it adds no support to GMAC's contention section 2815 is displaced. It provides only a general rule of interpretation and enforcement and does not preclude the application of specific statutes found outside of the Uniform Commercial Code, such as criminal laws and section 2815. Similarly, its assertion that Uniform Commercial Code section 9204, subdivision (3), precludes revocations of pledge agreements as to future advances is without merit. That section merely is an enabling provision which essentially authorizes the inclusion of future advances in a security agreement. There is no conflict with section 2815 which provides that a guarantor may revoke his guaranty at any time to preclude his liability as to any such future advances.

## DISPOSITION

The judgment is reversed and the cause remanded. The superior court is directed to enter judgment for Pearl. Appellant to recover his costs for this appeal.

Froehlich, J., and Nares, J., concurred.