[No. D024869. Fourth Dist., Div. One. Feb. 11, 1998.]

CARLOS A. LEON, Plaintiff and Appellant, v.
FAMILY FITNESS CENTER (#107), INC., Defendant and Respondent.

## Counsel

David K. Kroll for Plaintiff and Appellant.

Haasis & Goodin, Steven R. Haasis, Nelson J. Goodin, Haasis, Pope & Correll and Pamela M. Shaw for Defendant and Respondent.

## Opinion

**WORK, Acting P. J.**—Carlos A. Leon appeals a summary judgment entered in favor of Family Fitness Center (#107), Inc. (Family Fitness) in his negligence action for personal injuries sustained when a bench collapsed beneath him while using the sauna at Family Fitness. Leon contends the trial court erroneously concluded there were no triable issues of material fact regarding whether the liability release contained in the retail installment contract he signed was legally adequate to exculpate Family Fitness from its own negligence and whether the release was obtained by fraud or overreaching in its inception. On de novo review, we conclude the purported release is neither sufficiently conspicuous nor unambiguous to insulate Family Fitness from liability to Leon for injuries received when its sauna bench collapsed. Accordingly, we reverse the judgment and remand the matter for further proceedings.

### Factual and Procedural Background

Carlos Leon signed a "Club Membership Agreement (Retail Installment Contract)" on June 1993 and thereafter became a member of Family Fitness.

The membership agreement is a legal-length single sheet of paper covered with writing front and back. The front page is divided into two columns, with the right-hand column containing blanks for insertion of financial and "Federal Truth in Lending" data plus approximately seventy-six lines of text of varying sizes, some highlighted with bold print. The left-hand column contains approximately 90 lines of text undifferentiated as to size, with no highlighting and no paragraph headings or any other indication of its contents. The back of the agreement contains approximately 90 lines of text. The exculpatory clause is located at the bottom of the left-hand column of the front page and states the following: "Buyer is aware that participation in a sport or physical exercise may result in accidents or injury, and Buyer assumes the risk connected with the participation in a sport or exercise and represents that Member is in good health and suffers from no physical impairment which would limit their use of FFC's facilities. Buyer acknowledges that FFC has not and will not render any medical services including medical diagnosis of Member's physical condition. Buyer specifically agrees that FFC, its officers, employees and agents shall not be liable for any claim, demand, cause of action of any kind whatsoever for, or on account of death, personal injury, property damage or loss of any kind resulting from or related to Member's use of the facilities or participation in any sport, exercise or activity within or without the club premises, and Buyer agrees to hold FFC harmless from same."

In January 1994, Leon sustained head injuries when a sauna bench on which he was lying collapsed beneath him at Family Fitness. After Leon filed an action for personal injuries against Family Fitness, the trial court granted summary judgment for Family Fitness based on its defense of release.

## DISCUSSION

Summary judgment is proper only where there is no triable issue of material fact and the moving party is entitled to judgment as a matter of law. (Code Civ. Proc., § 437c, subd. (c).) ■ "On review of a summary judgment in favor of the defendant, we review the record de novo to determine whether the defendant has conclusively negated a necessary element of the plaintiff's case or demonstrated that under no hypothesis is there a material issue of fact that requires the process of trial." (*Ann M.* v. *Pacific Plaza Shopping Center* (1993) 6 Cal.4th 666, 673-674 [25 Cal.Rptr.2d 137, 863 P.2d 207].) Although we must strictly construe the moving party's papers and liberally construe those of the opposing party, the latter bears the burden of showing that triable issues of fact exist. (*Pearl* v. *General Motors*

*Acceptance Corp.* (1993) 13 Cal.App.4th 1023, 1027 [16 Cal.Rptr.2d 805].) We resolve all doubts in favor of the party opposing the judgment. (*Frank and Freedus* v. *Allstate Ins. Co.* (1996) 45 Cal.App.4th 461, 469 [52 Cal.Rptr.2d 678].) "While '[s]ummary judgment is a drastic procedure, should be used with caution [citation] and should be granted only if there is no issue of triable fact [citations],' [citation] it is also true '[j]ustice requires that a defendant be as much entitled to be rid of an unmeritorious lawsuit as a plaintiff is entitled to maintain a good one.' [Citation.]" (*Ibid.*)

■ "An express release is not enforceable if it is not easily readable." (*Conservatorship of Estate of Link* (1984) 158 Cal.App.3d 138, 141 [205 Cal.Rptr. 513].) "Furthermore, the important operative language should be placed in a position which compels notice and must be distinguished from other sections of the document. A [layperson] should not be required to muddle through complex language to know that valuable, legal rights are being relinquished." (*Id.* at p. 142.) An exculpatory clause is unenforceable if not distinguished from other sections, if printed in the same typeface as the remainder of the document, and if not likely to attract attention because it is placed in the middle of a document. (*Ibid.*) In other words, a release must not be buried in a lengthy document, hidden among other verbiage, or so encumbered with other provisions as to be difficult to find. (*Bennett* v. *United States Cycling Federation* (1987) 193 Cal.App.3d 1485, 1489 [239 Cal.Rptr. 55].)

A.

■ The trial court found the exculpatory clause was sufficiently conspicuous, citing only that it is written in 8-point type as required for retail installment contracts by Civil Code section 1803.1 and stated in plain and simple language. Although print size is an important factor, it is not the only one to be considered in assessing the adequacy of a document as a release. (*Bennett* v. *United States Cycling Federation, supra,* 193 Cal.App.3d at p. 1489.) The court failed to address specifically other relevant characteristics of the exculpatory clause–its size, form and location within the undifferentiated paragraph in which it appears. In fact, Civil Code section 1803.2 requires warnings to protect consumers' financial interests from potential hazards in retail installment contracts by providing notice in larger, boldface type (14-, 12- or 10-point). Clearly, Civil Code section 1803.1's perfunctory mandate that all retail installment sales contracts be *at least* in 8-point type, is not legislative acknowledgement that 8-point type alone is per se evidence of adequate conspicuousness so as to universally relieve a party of liability for its general negligence. Indeed, Civil Code section

1812.85 requires even a provision of lesser import, a cancellation clause in contracts for health services offered by facilities such as Family Fitness, to be *at least* 10-point boldface print.

Here, the release clause, although a separate paragraph, is in undifferentiated type located in the middle of a document. Although some other portions are printed in bold and in enlarged print, the releasing paragraph is not prefaced by a heading to alert the reader that it is an exculpatory release, contains no bold lettering, and is in the same smaller font size as is most of the document. No physical characteristic distinguishes the exculpatory clause from the remainder of the document. The document itself is titled "Club Membership Agreement (Retail Installment Contract)" giving no notice to the reader it includes a release or waiver of liability.[1] Of particular relevance, there is no language to alert a reader that Family Fitness intended the release to exculpate it from claims based on its own negligence. Where such exculpation is sought, the release must contain specific words "clearly and explicitly expressing that this was the intent." (*Ferrell* v. *Southern Nevada Off-Road Enthusiasts, Ltd.* (1983) 147 Cal.App.3d 309, 317 [195 Cal.Rptr. 90]; see also *Celli* v. *Sports Car Club of America, Inc.* (1972) 29 Cal.App.3d 511, 518 [105 Cal.Rptr. 904].)

■ To be valid and enforceable, a written release purporting to exculpate a tortfeasor from damage claims based on its future negligence or misconduct must clearly, unambiguously, and explicitly express this specific intent of the subscribing parties. (*Allabach* v. *Santa Clara County Fair Assn.* (1996) 46 Cal.App.4th 1007, 1015 [54 Cal.Rptr.2d 330].) " ' "If a tortfeasor is to be released from such liability the language used 'must be clear, explicit and comprehensible in each of its essential details. Such an agreement, read as a whole, must clearly notify the prospective releasor or indemnitor of the effect of signing the agreement.' " ' " (*Ibid.*, quoting *Paralift, Inc.* v. *Superior Court* (1993) 23 Cal.App.4th 748, 755 [29 Cal.Rptr.2d 177].)

### B.

■ The membership agreement signed by Leon is prefaced with an assumption of the risk statement. The general release is unobtrusively inserted thereafter. Although some courts have treated the two interchangeably (*Madison* v. *Superior Court* (1988) 203 Cal.App.3d 589, 597 [250

---

[1]Contrast the cycling event entry application in *Okura* v. *United States Cycling Federation* (1986) 186 Cal.App.3d 1462, 1465 [231 Cal.Rptr. 429], in which the application heading includes identification that it is also a release form.

Cal.Rptr. 299]) others have separately analyzed the enforceability of either. (*Saenz* v. *Whitewater Voyages, Inc.* (1990) 226 Cal.App.3d 758, 763 [276 Cal.Rptr. 672]; *Ferrell* v. *Southern Nevada Off-Road Enthusiasts, Ltd.*, *supra*, 147 Cal.App.3d at p. 316.) Whether taken separately or analyzed as a whole, we conclude the general release statement is fatally ambiguous.

■ The Restatement Second of Torts states: "In order for the agreement to assume the risk to be effective, it must also appear that its terms were intended by both parties to apply to the particular conduct of the defendant which has caused the harm. Again, where the agreement is drawn by the defendant and the plaintiff passively accepts it, its terms will ordinarily be construed strictly against the defendant." (Rest.2d Torts, § 496B, com. d, p. 566.) In its most basic sense, assumption of risk means that one person, in advance, has given his express consent to relieve another of obligations toward himself, and to assume the chance of injury from a *known risk* arising from what the other is to do or leave undone. The result is the other person is relieved of a legal duty to the plaintiff; and being under no duty, he cannot be charged with negligence solely based on the occurrence of the event anticipated. (*Madison* v. *Superior Court*, *supra*, 203 Cal.App.3d at p. 597.)

Here, an individual who understandingly entered into the membership agreement at issue can be deemed to have waived any hazard known to relate to the use of the health club facilities. These hazards typically include the risk of a sprained ankle due to improper exercise or overexertion, a broken toe from a dropped weight, injuries due to malfunctioning exercise or sports equipment, or from slipping in the locker-room shower. On the other hand, no Family Fitness patron can be charged with realistically appreciating the risk of injury from simply reclining on a sauna bench. Because the collapse of a sauna bench when properly utilized is not a "known risk," we conclude Leon cannot be deemed to have assumed the risk of this incident as a matter of law.

## C.

■ The Family Fitness membership agreement contained a general release or hold harmless provision as well. ■ "[W]here a participant in an activity has expressly released the defendant from responsibility for the consequences of any act of negligence, 'the law imposes no requirement that [the participant] have had a specific knowledge of the particular risk which resulted in his death [or injury.]' . . . Not every possible specific act of negligence by the defendant must be spelled out in the agreement or

discussed by the parties. . . . Where a release of all liability for *any* act of negligence is given, the release applies to any such negligent act, whatever it may have been. . . . '*It is only necessary that the act of negligence, which results in injury to the releasor, be reasonably related to the object or purpose for which the release is given.*' " (*Paralift, Inc.* v. *Superior Court, supra,* 23 Cal.App.4th at p. 757, italics added.) ▮▮▮ Here, Family Fitness's negligence was not reasonably related to the object or purpose for which the release was given, that is, as stated, injuries resulting from participating in sports or exercise rather than from merely reclining on the facility's furniture. (See *Bennett* v. *United States Cycling Federation, supra,* 193 Cal.App.3d at p. 1490.)

The objective purpose of the release Leon signed was to allow him to engage in fitness activities within the Family Fitness facilities. However, it was not this type of activity which led to his injury. Leon allegedly was lying on a fixed, nonmovable, permanent bench in the sauna room. Injuries resulting during the proper use of the bench would no more be expected to be covered by the clause than those caused by the ceiling falling on his head or from a pratfall caused by a collapsing office chair. These incidents have no relation to an individual's participation in a health club's fitness regimen.

Further, the release is ineffective because, read as a whole, it does not clearly notify a customer of the effect of signing the agreement–it was not clear, unambiguous and explicit. (*Allabach* v. *Santa Clara County Fair Assn., supra,* 46 Cal.App.4th 1007, 1015.) The release begins with language that participation in a sport or physical exercise may result in accidents or injury, and buyer assumes the risk connected with the participation in such. The release is followed by a statement in large print and bold, capital letters: "MODERATION IS THE KEY TO A SUCCESSFUL FITNESS PROGRAM AND ALSO THE KEY TO PREVENTING INJURIES." Family Fitness placed the general waiver between these two statements which deal strictly with the risks inherent in an exercise or sports program without any mention that it was intended to insulate the proprietor from liability for injuries caused by its own negligence.

Reading the entire document leads to the inescapable conclusion the release does not clearly, explicitly and comprehensibly set forth to an ordinary person untrained in the law, such as Leon, that the intent and effect of the document is to release claims for his own personal injuries resulting from the enterprise's own negligent acts, regardless whether related to the sports or exercise activities it marketed.

## DISPOSITION

The judgment is reversed. Leon is entitled to costs on appeal.

McDonald, J., concurred. Haller, J., concurred in the result.