[No. F043071. Fifth Dist. Apr. 27, 2004.]

GEORGE SWEAT, Plaintiff and Appellant, v.
BIG TIME AUTO RACING, INC., Defendant and Respondent.

COUNSEL

Faulkner Law Offices, Matthew J. Faulkner, Kathleen Ellis Faulkner and James L. Faulkner for Plaintiff and Appellant.

Prindle, Decker & Amaro, Jack R. Reinholtz and Bradley L. Taylor for Defendant and Respondent.

OPINION

**VARTABEDIAN, Acting P. J.**—Appellant George Sweat sued respondent speedway owner Big Time Auto Racing for personal injuries suffered when the speedway pit-area bleachers collapsed. In respondent's answer to appellant's complaint, the tenth affirmative defense alleges appellant had released respondent from all liability for any injuries sustained while on the premises. In the first phase of a bifurcated trial limited to the adjudication of this asserted complete defense, the trial court found for respondent, determining that the injury was reasonably related to the purpose of the release agreement. Based upon the release of liability, the court awarded judgment in favor of respondent. Appellant appeals, claiming the negligence in this case was not reasonably related to the purpose of the release. We reverse.

## FACTS

Appellant went to Bakersfield Speedway on March 11, 2000, to watch an automobile race. At one end of the speedway is an area known as the pit area. Leading up to and during the race, entry to the pit area requires a separate admission fee and the signing of a waiver agreement; general admission does not require this signature. The pit area features bleachers for observation of the racing event. After the race is over, others, having neither paid the same consideration nor signed the waiver, may enter the pit area and use these bleachers.

The pertinent language of the release prepared by respondent is as follows: "IN CONSIDERATION of being permitted to enter for any purpose a RESTRICTED AREA (herein defined as . . . [the] pit areas . . .), or being permitted to . . . observe . . . the event, EACH . . . for himself. . . :

"1. HEREBY RELEASES, WAIVES, DISCHARGES AND COVENANTS NOT TO SUE the . . . track owner . . . from all liability to the undersigned . . . for any claim . . . , whether caused by the negligence of the releasees or otherwise while the undersigned is in or upon the restricted area and/or . . . observing . . . the event. [¶] . . . [¶]

"3. HEREBY ASSUMES FULL RESPONSIBILITY FOR AND RISK OF BODILY INJURY. . . due to the negligence of releasees or otherwise while in or upon the restricted area . . . and/or . . . observing . . . the event.

"EACH OF THE UNDERSIGNED expressly acknowledges and agrees that the activities of the event are very dangerous and involve the risk of serious injury and/or death and/or property damage. EACH OF THE UNDERSIGNED further expressly agrees that the foregoing release, waiver, and indemnity agreement is intended to be as broad and inclusive as permitted by the law . . . ."

On the date in question, appellant paid for both admissions, signed the waiver, and entered the restricted pit area. He sat on the bleachers, which collapsed, causing appellant to fall to the ground. Appellant alleges respondent is liable for his injuries resulting from this fall.

## DISCUSSION

A prima facie case of negligence requires a showing by the plaintiff that the defendant owed him a duty, that duty was breached, and that breach was the proximate cause of injury to the plaintiff. (*Benedek v. PLC Santa Monica* (2002) 104 Cal.App.4th 1351, 1356 [129 Cal.Rptr.2d 197].) Recovery under this theory may be barred when the plaintiff has signed an express contractual assumption of risk before he was injured. (*Coates v. Newhall Land & Farming, Inc.* (1987) 191 Cal.App.3d 1, 7 [236 Cal.Rptr. 181]; *Solis v. Kirkwood Resort Co.* (2001) 94 Cal.App.4th 354, 360 [114 Cal.Rptr.2d 265].) Express assumption of risk is an agreement made in advance of an activity by which a party takes upon himself or herself the chance of a "known risk" arising from what the other party does or leaves undone. (*Madison v. Superior Court* (1998) 203 Cal.App.3d 589, 597 [250 Cal.Rptr. 299].)

" 'Where, as here, no conflicting parol evidence is introduced concerning the interpretation of the document, "construction of the instrument is a question of law, and the appellate court will independently construe the writing." ' [Citation.] 'It therefore follows that we must independently determine whether the release in this case negated the duty element of the plaintiff['s] cause[] of action.' [Citation.]" (*Benedek v. PLC Santa Monica, supra,* 104 Cal.App.4th at p. 1356.)

In order for a release of liability to be held enforceable against a plaintiff, it "must be clear, unambiguous and explicit in expressing the intent

of the parties" (*Madison v. Superior Court, supra,* 203 Cal.App.3d at p. 598); the act of negligence that results in injury to the releasee must be reasonably related to the object or purpose for which the release is given (*id.* at p. 601); and the release cannot contravene public policy (*id.* at pp. 598–599). A release need not be perfect to be enforceable. (*National & Internat. Brotherhood of Street Racers, Inc. v. Superior Court* (1989) 215 Cal.App.3d 934, 938 [264 Cal.Rptr. 44].)

Appellant argues respondent's act of negligence, which allegedly caused the collapse of the bleachers, is not reasonably related to the object or purpose for which the release was signed. That object or purpose, he avers, is the activity of an automobile racing event. Respondent takes the position that the object or purpose of the release is merely to gain entry to the restricted pit area. Whether either of these alternatives, or some third alternative, is the object or purpose for which the release was given must be determined, since that is the very essence of both the appellant's case and the respondent's defense.

Regarding the scope of the release, respondent points to the unrestricted language releasing it from all liability for any injury sustained by appellant while in or upon the restricted area and/or observing the event. It contends that, simply because the alleged injury was sustained in the restricted area, it is reasonably related to the object or purpose for which the release was given—to allow entry into the restricted area.

It is true that "[a]n act of negligence is reasonably related to the object or purpose for which the release was given if it is included within the express scope of the release." (*Benedek v. PLC Santa Monica, supra,* 104 Cal.App.4th at pp. 1351, 1357–1358.)

We note, however, that in both the first and third numbered paragraphs, the agreement purports to cover acts of negligence while in the restricted area "and/or" observing the event. Taking this language literally suggests the release intends to cover negligent acts *anywhere,* whether in the restricted area or not. But if, as argued by respondent, the purpose of the release is to allow entry into the restricted area, why does the release extend to negligence occurring even when the person's "observing," or other race-related activity takes him or her outside of the restricted area? Thus, the "and/or" language in this context does cloud our view of the purpose of the release. We are aware the use of the language may be due to the form nature of the document; numerous entrants to the speedway acting in various capacities are required to sign it. The flexibility of the language allows the term "observing" to be substituted with other terms such as "competing" or "officiating." In

part because of the alternative language, we find it necessary to consider undisputed extrinsic evidence to assist us in our legal interpretation of the scope of the release.

Appellant points to undisputed extrinsic evidence that the general public is allowed to enter the restricted area, and to go onto the bleachers, after the races are over. Respondent does not require a release of liability or consideration from the new entrants at that time. Respondent contends this is not relevant because it does not alter the express language of the release.

"The circumstances under which a release is executed can give rise to an ambiguity that is not apparent on the face of the release. [Citation.] If an ambiguity as to the scope of the release exists, it should normally be construed against the drafter. [Citations.]" (*Benedek v. PLC Santa Monica, supra*, 104 Cal.App.4th at p. 1357.)

Our effort to interpret the scope of the release necessarily causes us to look to the undisputed, relevant extrinsic evidence showing the category of persons from whom respondent did not seek the execution of a release. There is an obvious inference as to why the release is not required of postrace entrants: the risks from which defendant requests release are no longer present.

This inference, when combined with the parties' express acknowledgment in the agreement that the "activities of the event are very dangerous and involve the risk of serious injury and/or death" clarifies the purpose of the agreement—it is to require the releasee to assume the risk of injury as a result of being in close proximity to the dangerous activity of automobile racing and any further risk that might result from the activity of observing such a race. Obviously, in order for a person to be injured as a result of the race activity or the observation of such activity, the injury-causing event must occur while race activity is still occurring. But if a set of bleachers collapses as a result of defective construction or maintenance, there is no causal relation to the dangers caused by the race or observation activities regardless of whether the collapse occurs during the race.

There is no doubt appellant sought entrance to the particular area designated the "pit area." To argue, however, that mere presence in that area, as such, was the object or purpose for which he gave a release of liability is contrary to the purpose of the release. Appellant sought entrance because an auto racing activity was scheduled to occur while he would be in the restricted area; it was for the purpose of observing the race from that up-close perspective that he signed the release.

Appellant points to *Leon v. Family Fitness Center (# 107), Inc.* (1998) 61 Cal.App.4th 1227 [71 Cal.Rptr.2d 923] as an example of an act of negligence

not reasonably related to the object or purpose for which release was given. However, we need not resort to the dicta cited to us from *Leon,* having followed fundamental principles of contractual interpretation. As the parties have noted here, the *Leon* court held the release there to be invalid on its face. (*Id.* at p. 1235.)

Respondent argues appellant's relief should be barred based on the discussion and holding in *Benedek v. PLC Santa Monica, supra,* 104 Cal.App.4th 1351. In *Benedek,* the plaintiff was injured while adjusting the position of a television that was suspended above the plaintiff's head. (*Id.* at p. 1355.) An agreement was signed by the plaintiff, releasing the health club owners from liability for injuries sustained while in the spa, whether the injuries were sustained during the use of exercise equipment or not. (*Id.* at p. 1354.) The *Benedek* court held that the release barred recovery. (*Ibid.*)

We see important distinctions from the facts in *Benedek.* There, the waiver agreement expressly released the club owner from liability for any personal injuries suffered by a party while on the club premises " 'whether using exercise equipment or not.' " (*Benedek v. PLC Santa Monica, supra,* 104 Cal.App.4th at p. 1358.) That language in the agreement convinced the *Benedek* court that "[t]he purpose for which the release was given was to allow Benedek 'access' to [the club owner's] 'facilities and services.' " (*Ibid.*) Access to the services and facilities of a health club, one that incidentally had televisions suspended above head level, was the object or purpose for which release was given because the services and facilities themselves are desired. Because Benedek was injured while inside the facilities, the release barred recovery.

In contrast, nowhere in the present release does it say that the speedway is released from liability whether or not race activity is occurring. As we have already determined here, the purpose of the present release was not merely to give access to the restricted areas of the speedway, but to require the releasee to assume the risk of injury as a result of being in close proximity to the dangerous activity of automobile racing and any further risk that might result from the activity of observing such a race. Access to the restricted area here was not the object or purpose for which release was given; rather, it was observation of the event from that close-up perspective.

"In order for the agreement to assume the risk to be effective, it must also appear that its terms were intended by both parties to apply to the particular conduct of the defendant which has caused the harm . . . . [W]here the agreement is drawn by the defendant and the plaintiff passively accepts it, its terms will ordinarily be construed strictly against the defendant." (Rest.2d Torts, § 496B, com. d.)

■ Here, appellant's express assumption of risk would cover all hazards related to the automobile race and its observation. As appellant points out, those might include a tire separating from a car and hitting someone, a car leaving the track and striking a spectator, or someone being burned by a crash. This is not an exhaustive list. One can even anticipate the flying tire, the errantly driven car, or the flames from the crash causing the collapse of bleachers. The race activity might lead to less dramatic accidents: a person slipping on automotive grease in the pit area, or even a race observer slipping on spilled soda while keenly watching the race as he or she steps through the bleachers. The release agreement here does not, however, contractually charge appellant with assuming the risk of injury from defectively constructed or maintained bleachers, should a full trial on the merits establish such facts.

## DISPOSITION

The judgment is reversed and the matter is remanded for further proceedings consistent with this opinion. Costs on appeal are awarded to appellant.

Buckley, J., and Wiseman, J., concurred.

Respondent's petition for review by the Supreme Court was denied August 18, 2004. Chin, J., did not participate therein. Brown, J., was of the opinion that the petition be granted.