[No. B181446. Second Dist., Div. Four. Feb. 15, 2006.]

REOVEN CAPRI, Plaintiff and Appellant, v.
L.A. FITNESS INTERNATIONAL, LLC, Defendant and Respondent.

## COUNSEL

Hanger, Levine & Steinberg and Jody Steinberg for Plaintiff and Appellant.

Manning & Marder Kass Ellrod Ramirez, Anthony J. Ellrod, Allison G. Vasquez and Sylvia Havens for Defendant and Respondent.

## OPINION

**EPSTEIN, P. J.**—In this case we conclude that Civil Code section 1668, considered together with the statutory framework in applicable provisions of the Health and Safety Code, precludes operation of the waiver and release clause in a health club membership agreement.

### FACTUAL AND PROCEDURAL SUMMARY

In January 2001, appellant Reoven Capri joined the Woodland Hills branch of the L.A. Fitness health club (the club), which is owned by respondent L.A. Fitness International, LLC (L.A. Fitness). He signed a membership agreement, which contained the following release and waiver of liability:

"RELEASE AND WAIVER OF LIABILITY AND INDEMNITY. You hereby acknowledge and agree that Member's use of L.A. Fitness' facilities, services, equipment or premises, involves risks of injury to persons and property, including those described below, and Member assumes full responsibility for such risks. In consideration of being permitted to enter any facility of L.A. Fitness (a 'Club') for any purpose including, but not limited to, observation, use of facilities, services or equipment, or participation in any way, Member agrees to the following: Member hereby releases and holds L.A. Fitness, its directors, officers, employees, and agents harmless from all liability to Member and Member's personal representatives, assigns, heirs, and next of kin for any loss or damage, and waives any claim or demands therefor, on account of injury to Member's person, or property, including injury leading to the death of Member, whether caused by the active or passive negligence of L.A. Fitness or otherwise, while Member is in, upon, or about L.A. Fitness premises or using any L.A. Fitness facilities, services or equipment. Member also hereby agrees to indemnify L.A. Fitness from any loss, liability, damage or cost L.A. Fitness may incur due to the presence of Member in, upon or about the L.A. Fitness premises or in any way observing or using any facilities or equipment of L.A. Fitness, whether caused by the negligence of Member or otherwise. You represent (a) that Member is in good physical condition and has no disability, illness, or other condition that could prevent Member from exercising without injury or impairment of health, and (b) that Member has consulted a physician concerning an exercise program that will not risk injury to Member or impairment of Member's health. Such risk of injury includes (but is not limited to): injuries arising from use by Member or others of exercise equipment and machines; injuries arising from participation by Member or others in supervised or unsupervised activities or programs at a Club; injuries and medical disorders arising from exercising at a Club such as heart attacks, strokes, heat stress, sprains, broken bones, and torn muscles and ligaments,

among others; and accidental injuries occurring anywhere in Club dressing rooms, showers and other facilities. Member further expressly agrees that the foregoing release, waiver and agreement is intended to be as broad and inclusive as is permitted by the law of the State of California and that if any portion thereof is held invalid, it is agreed that the balance shall, notwithstanding, continue in full force and effect. Member has read this release and waiver of liability and indemnity clause, and agrees that no oral representations, statements or inducement apart from the foregoing written agreement have been made."

After joining the club, Mr. Capri used the treadmill and outdoor swimming pool two to three times a week. On November 7, 2002, as he was walking to the pool, Mr. Capri slipped and fell on the pool deck. The following day, he returned to the club and discovered an accumulation of algae around the drain on the pool deck, in the area where he fell.

Mr. Capri brought this personal injury action against L.A. Fitness, alleging causes of action for negligence and negligence per se. L.A. Fitness moved for summary judgment on several theories: that the claim was barred by plaintiff's execution of the release and waiver; that plaintiff assumed the risk of injury while using the premises; and that plaintiff was unable to establish the existence of a dangerous condition or that L.A. Fitness had notice of the condition. Mr. Capri opposed the motion, asserting that his action was premised on L.A. Fitness's violations of provisions of the Health and Safety Code and the Los Angeles County Code requiring proper maintenance of swimming pools. He argued that under Civil Code section 1668 (hereafter section 1668) it is against public policy to exempt a party from liability based on a violation of law, and thus his waiver and release could not be enforced to exempt L.A. Fitness from responsibility for his injuries.

The trial court granted the motion, based on the waiver and release. Judgment was entered in favor of L.A. Fitness, and Mr. Capri appeals. We reverse the judgment.

## DISCUSSION

### I

We review the trial court's grant of summary judgment de novo to determine whether triable issues of material fact exist. (*Saelzler v. Advanced Group 400* (2001) 25 Cal.4th 763, 767 [107 Cal.Rptr.2d 617, 23 P.3d 1143].) Respondent sought summary judgment based on the waiver and release signed by appellant. Appellant opposed the motion on the ground that the waiver and release was invalid under section 1668. That section provides: "All contracts

which have for their object, directly or indirectly, to exempt anyone from responsibility for his own fraud, or willful injury to the person or property of another, *or violation of law, whether willful or negligent*, are against the policy of the law." (Italics added.)

Appellant's first cause of action was for ordinary negligence. In his second cause of action, labeled "Negligence Per Se," appellant alleged that L.A. Fitness "allowed mildew and other such growth and debris to accumulate in the area around the swimming pool located within the Premises. As a result, Defendants, and each of them, were in violation of a statute, ordinance or regulation, including but not limited to State and County Health and Safety Code sections, and were negligent per se pursuant to the aforesaid Code sections." Based on this allegation, appellant argued that the waiver and release is invalid under section 1668 because it seeks to relieve respondent of its responsibility for violation of law.

Relying on *Tunkl v. Regents of University of California* (1963) 60 Cal.2d 92 [32 Cal.Rptr. 33, 383 P.2d 441] (*Tunkl*), respondent argued, and the trial court held, that section 1668 does not invalidate the release because recreational sports and other athletic activities do not involve a public interest, and a finding of public interest is necessary to invalidate a release for negligence. As we shall explain, while *Tunkl*'s public interest requirement applies to appellant's first cause of action for ordinary negligence, it does not apply to his second cause of action, which is premised on a violation of law.

In *Tunkl*, the Supreme Court determined the validity of a release signed by a patient as part of a hospital admission form. The court noted the troubled history of section 1668: "Although . . . the decisions uniformly uphold its prohibitory impact in one circumstance, the courts' interpretations of it have been diverse. Some of the cases have applied the statute strictly, invalidating any contract for exemption from liability for negligence. . . . The recent case of *Mills* v. *Ruppert* (1959) 167 Cal.App.2d 58, 62–63 [333 P.2d 818], however, apparently limits '[N]egligent . . . violation of law' exclusively to statutory law. Other cases hold that the statute prohibits the exculpation of gross negligence only; still another case states that the section forbids exemption from active as contrasted with passive negligence. [¶] In one respect, as we have said, the decisions are uniform. The cases have consistently held that the exculpatory provision may stand only if it does not involve 'the public interest.' " (*Tunkl, supra*, 60 Cal.2d 92, 95–96, fns. omitted.) The court then set out factors to be considered in determining if a transaction involves the public interest.[1]

---

[1] The *Tunkl* factors for placing particular contracts within the public interest generally concern "a business of a type generally thought suitable for public regulation. The party seeking exculpation is engaged in performing a service of great importance to the public,

■ The court in *Tunkl* was concerned with the validity of an exculpatory clause to avoid responsibility for ordinary negligence. In such a case, *Tunkl* invalidates any exculpatory provision affecting the public interest. (*Tunkl, supra,* 60 Cal.2d at p. 96.) *Tunkl* did not, however, add a "public interest" requirement where the contract purports to avoid liability for fraud, willful injury, or violation of law, whether intentional or negligent. The plain language of section 1668 renders such exculpatory provisions invalid as against public policy, and nothing in *Tunkl* alters that. "It is now settled—and in full accord with the language of the statute—that notwithstanding its different treatment of ordinary negligence, under section 1668, 'a party [cannot] contract away liability for his fraudulent or intentional acts or for his negligent violations of *statutory* law,' regardless of whether the public interest is affected." (*Health Net of California, Inc. v. Department of Health Services* (2003) 113 Cal.App.4th 224, 234 [6 Cal.Rptr.3d 235] (*Health Net*), quoting *Gardner v. Downtown Porsche Audi* (1986) 180 Cal.App.3d 713, 716 [225 Cal.Rptr. 757].)

■ We turn to appellant's complaint. His first cause of action alleges ordinary negligence. Under *Tunkl,* the exculpatory clause is invalid only if the contract affects the public interest. The cases consistently have held that "[e]xculpatory agreements in the recreational sports context do not implicate the public interest and therefore are not void as against public policy." (*Benedek v. PLC Santa Monica* (2002) 104 Cal.App.4th 1351, 1356–1357 [129 Cal.Rptr.2d 197]; see *Randas v. YMCA of Metropolitan Los Angeles* (1993) 17 Cal.App.4th 158, 161 [21 Cal.Rptr.2d 245], and cases cited.) There is no public policy bar to enforcement of the exculpatory provision for this cause of action.

The second cause of action alleges in substance that appellant's accident was caused by violation of Health and Safety Code sections 116040 and 116043.[2] Section 116040 provides: "Every person operating or maintaining a public swimming pool must do so in a sanitary, healthful and safe manner."

---

which is often a matter of practical necessity for some members of the public. The party holds himself out as willing to perform this service for any member of the public who seeks it, or at least for any member coming within certain established standards. As a result of the essential nature of the service, in the economic setting of the transaction, the party invoking exculpation possesses a decisive advantage of bargaining strength against any member of the public who seeks his services. In exercising a superior bargaining power the party confronts the public with a standardized adhesion contract of exculpation, and makes no provision whereby a purchaser may pay additional reasonable fees and obtain protection against negligence. Finally, as a result of the transaction, the person or property of the purchaser is placed under the control of the seller, subject to the risk of carelessness by the seller of his agents." (*Tunkl, supra,* 60 Cal.2d at pp. 98–101, fns. omitted.)

[2] All further statutory references are to this code unless otherwise indicated.

Section 116043 provides: "Every public swimming pool, including swimming pool structure, appurtenances, operation, source of water supply, amount and quality of water recirculated and in the pool, method of water purification, lifesaving apparatus, measures to insure safety of bathers, and measures to insure personal cleanliness of bathers shall be such that the public swimming pool is at all times sanitary, healthful and safe."[3]

Unlike the broad statement of negligence expressed in Civil Code section 1714,[4] these statutes are part of a detailed regulatory scheme which includes construction standards, safety standards, and sanitation requirements for public swimming pools. (Art. 5, div. 104, pt. 10, ch. 5, § 116025 et seq.) In addition to setting out standards for swimming pool sanitation and safety, the article in which these statutes are contained provides for inspection by public health officers (§ 116055); declares that any public swimming pool which is constructed, operated or maintained contrary to the provisions of the article is a public nuisance, subject to abatement (§§ 116060, 116063); and perhaps most importantly, it criminalizes any violation. Section 116065 provides: "Every person who violates any provision of this article, building standards published in the State Building Standards Code relating to swimming pools, or the rules and regulations adopted pursuant to the provisions of this article, is guilty of a misdemeanor, punishable by a fine of not less than fifty dollars ($50) nor more than one thousand dollars ($1,000), or by imprisonment for not more than six months, or both."

■ Appellant has alleged that respondent violated sections 116040 and 116043 of this article, and that this violation of law was the cause of his slip and fall. As such, it falls squarely within the explicit prohibition in section 1668 against contractual exculpation for a "violation of law" and is invalid. The trial court erred in finding this cause of action was barred by the release and waiver.

We find support for this conclusion in *Hanna v. Lederman* (1963) 223 Cal.App.2d 786 [36 Cal.Rptr. 150]. In that case, tenants suffered property damage after sprinklers flooded their leased premises. If the landlord had installed the type of sprinklers required by the municipal code, an alarm would

---

[3] Appellant also relies on Los Angeles County Code, chapter 7.47.120, subdivision (A), which requires that "[a]ll walls, ceilings, floors, pools, showers, bathtubs, steamrooms, and all other physical facilities for the establishment, shall be in good repair and maintained in a clean and sanitary condition."

[4] Civil Code section 1714 provides: "Everyone is responsible, not only for the result of his or her willful acts, but also for an injury occasioned to another by his or her want of ordinary care or skill in the management of his or her property or person, except so far as the latter has, willfully or by want of ordinary care, brought the injury upon himself or herself."

have sounded and reduced the time the property was subject to unsupervised water flow. The tenants sued the landlord and the court held that section 1668 invalidated an exculpatory lease provision: "Since the claim for damages because of negligence . . . was predicated upon the alleged violation of section 94.30312 of the Municipal Code, the exculpatory provision could not be a defense to that cause of action if the evidence showed such violation to be a proximate cause of the tenant's loss." (*Hanna v. Lederman*, at p. 792; see also *Halliday v. Greene* (1966) 244 Cal.App.2d 482, 488 [53 Cal.Rptr. 267].)

A similar result was reached more recently in *Health Net, supra,* 113 Cal.App.4th 224. That case involved the assignment of Medi-Cal patients between two participating health care plans. Welfare and Institutions Code section 14087.305, subdivision (j), required that "[t]o the extent possible, the arrangements for carrying out [default enrollments of Medi-Cal patients who had not selected a health plan] shall provide for the equitable distribution of Medi-Cal beneficiaries among participating prepaid health plans, or managed care plans." Health Net sued the Department of Health Services for injunctive relief and damages, claiming that as a result of the Department's enrollment practices, Health Net had not received any default enrollees in Tulare County for two months, and that the other plan had received more than 11,000. Health Net obtained injunctive relief, but was denied damages, based on an exculpatory clause in its contract with the Department.

The exculpatory clause in *Health Net* provided: " 'If it is necessary to interpret this Contract, all applicable laws may be used as aids in interpreting the Contract. However, the parties agree that any such applicable laws shall not be interpreted to create contractual obligations upon DHS or Contractor [(Health Net)], unless such applicable laws are expressly incorporated into this Contract in some section other than this Section 3.1, Interpretation of Contract. Except for Section 3.19, Sanctions and Section 3.20, Liquidated Damages Provision, the parties agree that any remedies for DHS'[s] or Contractor's non-compliance with laws not expressly incorporated into this Contract, or any covenants implied to be part of this Contract, shall not include money damages, but may include equitable remedies such as injunctive relief or specific performance.' " (*Health Net, supra*, 113 Cal.App.4th at pp. 228–229, italics omitted.) The agreement did not contain any reference to the We..re and Institutions Code, or the related regulations.

On appeal, Health Net, like appellant, claimed the exculpatory clause was invalid under section 1668 to the extent it purported to exculpate the Department from liability for monetary damages caused by statutory

violations. The Court of Appeal held that the plain language of section 1668 invalidates contract clauses seeking to relieve a party from responsibility for future statutory and regulatory violations, regardless of whether the public interest is affected. (*Health Net, supra,* 113 Cal.App.4th at p. 235.)[5]

We conclude that the exculpatory clause in the membership agreement is invalid under section 1668 as to appellant's second cause of action for negligence per se. Respondent's summary judgment motion was predicated on this exculpatory clause, and the trial court granted the motion on that basis. This was error.

## II

Respondent argues that even if the release and waiver is invalid under section 1668, summary judgment should be affirmed because the membership agreement contained an express assumption of the risk clause, under which appellant expressly assumed the risk of injury while using the club's facilities. But this portion of the agreement still seeks to exculpate respondent for its violation of the swimming pool safety statutes, and hence is invalid under section 1668. It is this violation of law theory which distinguishes appellant's case from *Madison v. Superior Court* (1988) 203 Cal.App.3d 589 [250 Cal.Rptr. 299], in which an express agreement to assume the risk of injury in a scuba diving training course was held to be valid.

Respondent next argues that the action is barred by appellant's primary assumption of the risk because slipping and falling around a pool is an inherent risk in the activity of swimming. A defendant seeking summary judgment on the basis of primary assumption of the risk must establish "that the defendant owed no legal duty to the plaintiff to prevent the harm of which the plaintiff complains." (*Freeman v. Hale* (1994) 30 Cal.App.4th 1388, 1395 [36 Cal.Rptr.2d 418].) Respondent has not done so.

In *Knight v. Jewett* (1992) 3 Cal.4th 296 [11 Cal.Rptr.2d 2, 834 P.2d 696], the Supreme Court discussed the question of duty in the context of recreational activities: "As a general rule, persons have a duty to use due care to avoid injury to others, and may be held liable if their careless conduct injures another person. (See Civ. Code, § 1714.) Thus, for example, a property owner ordinarily is required to use due care to eliminate dangerous conditions

---

[5] The court also invalidated the exculpatory clause based on an alternative finding that the public interest is affected, within the meaning of *Tunkl.* (*Health Net, supra,* 113 Cal.App.4th at pp. 234–235.)

on his or her property. (See, e.g., *Rowland v. Christian* (1968) 69 Cal.2d 108 [70 Cal.Rptr. 97, 443 P.2d 561, 32 A.L.R.3d 496].) In the sports setting, however, conditions or conduct that otherwise might be viewed as dangerous often are an integral part of the sport itself. Thus, although moguls on a ski run pose a risk of harm to skiers that might not exist were these configurations removed, the challenge and risks posed by the moguls are part of the sport of skiing, and a ski resort has no duty to eliminate them. (See generally Annot. (1987) 55 A.L.R.4th 632.) In this respect, the nature of a sport is highly relevant in defining the duty of care owed by the particular defendant. [¶] Although defendants generally have no legal duty to eliminate (or protect a plaintiff against) risks inherent in the sport itself, it is well established that defendants generally do have a duty to use due care not to increase the risks to a participant over and above those inherent in the sport. Thus, although a ski resort has no duty to remove moguls from a ski run, it clearly does have a duty to use due care to maintain its towropes in a safe, working condition so as not to expose skiers to an increased risk of harm. The cases establish that the latter type of risk, posed by a ski resort's negligence, clearly is not a risk (inherent in the sport) that is assumed by a participant. (See generally Annot. (1979) 95 A.L.R.3d 203.)" (3 Cal.4th at pp. 315–316.)

 The case before this court is more like the unsafe towrope than the dangerous mogul. There are risks inherent in the sport of swimming, such as drowning, hitting the wall or pool floor, or colliding with another swimmer. But the risk of algae growing on the pool deck causing it to become dangerously slippery is not inherent in the sport itself, and thus is not a risk assumed by those who utilize the swimming pool so as to relieve the pool owner of the duty to keep the deck clean.

The two cases cited by respondent are distinguishable. In *Kahn v. East Side Union High School Dist.* (2003) 31 Cal.4th 990 [4 Cal.Rptr.3d 103, 75 P.3d 30], the Supreme Court addressed an instructor's duty to a student on the school swim team who was seriously injured during a practice dive into a shallow racing pool: "We agree that the object to be served by the doctrine of primary assumption of risk in the sports setting is to avoid recognizing a duty of care when to do so would tend to alter the nature of an active sport or chill vigorous participation in the activity. This concern applies to the process of learning to become competent or competitive in such a sport. Novices and children need instruction if they are to participate and compete, and we agree with the many Court of Appeal decisions that have refused to define a duty of care in terms that would inhibit adequate instruction and learning or eventually alter the nature of the sport. Accordingly, we believe that the standard set forth in *Knight* [*v. Jewett*], *supra*, 3 Cal.4th 296, as it applies to coparticipants,

generally should apply to sports instructors, keeping in mind, of course, that different facts are of significance in each setting." (31 Cal.4th at p. 1011.) The court held that where it is alleged that a sports instructor has required a student to perform beyond his or her capacity or without adequate instruction, it must be alleged and proven that the instructor acted with intent to cause the student's injury, or that the instructor's conduct was reckless, in that it was totally outside the range of ordinary activity involved in teaching or coaching the sport. (*Ibid.*) This holding has no bearing on the duty of the owner of a sports facility to keep the premises in good repair.

In the second case, *Leon v. Family Fitness Center (# 107), Inc.* (1998) 61 Cal.App.4th 1227 [71 Cal.Rptr.2d 923], the plaintiff was injured when a sauna bench collapsed. The court considered the enforceability of an express assumption of the risk provision contained in the written membership agreement: "Here, an individual who understandingly entered into the membership agreement at issue can be deemed to have waived any hazard known to relate to the use of the health club facilities. These hazards typically include the risk of a sprained ankle due to improper exercise or overexertion, a broken toe from a dropped weight, injuries due to malfunctioning exercise or sports equipment, or from slipping in the locker-room shower. On the other hand, no Family Fitness patron can be charged with realistically appreciating the risk of injury from simply reclining on a sauna bench." (*Id.* at p. 1234.) The court found the collapse of a properly utilized sauna bench was not a "known risk," and held that the plaintiff could not be deemed to have expressly assumed the risk of the incident as a matter of law. (*Ibid.*)

As we have explained, the public policy limitation in section 1668 precludes an express assumption of the risk in our case based on the alleged violation of law. And even if, as the court stated in *Leon*, a slip in a shower is a known hazard of the use of a health club, there is at least a triable issue of material fact whether a slip and fall on algae on a pool deck is also a known hazard. Respondent was not entitled to summary judgment based on primary assumption of the risk.

### III

In light of our reversal of the judgment on the second cause of action, we need not reach appellant's alternative argument, that respondent's actions were willful, and hence fall within the provision of section 1668 invalidating an exculpatory clause where the damage was caused by willful misconduct.

## DISPOSITION

The judgment is reversed and the cause remanded for further proceedings on the second cause of action. The parties are to bear their own costs on appeal.

Hastings, J., and Willhite, J., concurred.

Respondent's petition for review by the Supreme Court was denied May 17, 2006, S142009. Chin, J., was of the opinion that the petition should be granted.