Filed 3/24/25; Modified and certified for partial publication 4/21/25 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| ZACKARY DIAMOND, as represented, etc.,<br><br>Plaintiff and Appellant,<br><br>v.<br><br>SCOTT SCHWEITZER et al.,<br><br>Defendants and Respondents. | F086150<br><br>(Super. Ct. No. BCV-20-100707)<br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Kern County.  Thomas S. Clark, Judge.

Rodriguez & Associates; Esner, Chang, Boyer & Murphy, Kevin K. Nguyen and Andrew N. Chang for Plaintiff and Appellant.

Agajanian, McFall, Weiss, Tetreault & Crist and Paul L. Tetreault for Defendants and Respondents.

-ooOoo-

Plaintiff Zackary Diamond appeals from a judgment entered after the trial court granted a motion for summary judgment brought by defendants Scott Schweitzer,

Schweitzer Motorsports Productions doing business as Bakersfield Speedway, and Christian Schweitzer, an individual doing business as Starting Line Refreshments.

Plaintiff suffered injuries from a punch inflicted by a third party during an altercation in the restricted pit area at Bakersfield Speedway. Plaintiff alleges defendants were negligent in failing to provide reasonable security, adequately responding to the altercation, and undertaking reasonable rescue efforts. Defendants moved for summary judgment, asserting plaintiff's negligence claims were barred by the release and waiver of liability form he signed to gain admission to the pit area. The trial court granted the motion, concluding the release's language was clear, unequivocal, broad in scope, and included the negligent conduct alleged in this case. The court interpreted the release as including risks arising out of or related to racing activities. It concluded the assault was such a risk and, thus, was the type of event anticipated and covered by the release.

On appeal, plaintiff contends the release is unenforceable because the injury-producing act of negligence was not reasonably related to the purpose for which he signed the release, which he describes as observing the race up close from the restricted pit area while it was occurring. In addition, the parties responded to this court's request for supplemental briefing regarding whether plaintiff pled a theory of gross negligence and whether that theory was or was not subject to defendants' motion for summary judgment.

We conclude the requirements for an enforceable release have been met: (1) the release contains a clear, unambiguous and explicit expression of the parties' intent to release all liability for plaintiff's injury; (2) the alleged acts of negligence resulting in the injury are reasonably related to the object or purpose for which the release was given; and (3) the release does not contravene public policy. (See *Sweat v. Big Time Auto Racing, Inc.* (2004) 117 Cal.App.4th 1301, 1304–1305 (*Sweat*) [three requirements for enforceability of a release].) We also conclude (4) defendants adequately raised a complete defense based on the signed release of liability to all theories of negligence

2.

alleged in the complaint, and (5) plaintiff failed to rebut that defense in opposition to defendants' motion for summary judgment.

We therefore affirm.

## PROCEEDINGS

In March 2020, plaintiff, through Linda Valdez, his guardian ad litem, filed a complaint for damages against defendants,[1] alleging causes of action for (1) negligence, (2) premises liability, (3) negligent hiring, selection, approval, retention, and supervision, and (4) negligent infliction of emotional distress.[2]

Plaintiff alleged that defendants breached their duty of care by failing to take reasonable steps to ensure plaintiff's safety from dangerous conditions while attending a June 9, 2018, racing event at defendants' raceway. Plaintiff alleged that defendants negligently failed to provide adequate security or supervision, including by failing to hire, train, and supervise adequate security staff where plaintiff observed the events that day, respond to the ongoing fight that resulted in plaintiff's injury, and undertake appropriate rescue efforts.

Defendants answered the complaint with a general denial. Defendants' seventh affirmative defense alleged that plaintiff "expressly in writing waived and released all

---

[1]Plaintiff also named David Hays, David Hays doing business as A-1 Spring & Supply, and Kyle Flippo. Hays and Flippo did not join in defendants' motion for summary judgment, or alternatively, summary adjudication.

[2]The trial court's order granting defendants' motion for summary judgment stated the motion was moot as to plaintiff's fourth cause of action for negligent infliction of emotional distress because it "had previously been dismissed …." Plaintiff does not acknowledge, much less challenge, the finding that he dismissed the fourth cause of action or the related mootness determination. The finding is supported by a May 14, 2020, entry in the register of actions describing the filing of a request for dismissal (partial) without prejudice as to the fourth cause of action against defendants. The contention in plaintiff's appellate briefing that summary adjudication is not proper as to his claim for negligent infliction of emotional distress is a non sequitur because that claim was not summarily adjudicated. Based on the appellate record, we conclude the trial court correctly determined summary adjudication of the cause of action for negligent infliction of emotional distress was moot and address it no further.

liability" against them based on their alleged negligence, agreed to indemnify and hold them harmless, and assumed all risks and dangers "broadly associated" with attending the event. So, plaintiff "relieved … defendant[s] of a duty of care, and the claims of the plaintiff are barred as a matter of law."

In January 2022, defendants filed and served a motion for summary judgment, or, alternatively, summary adjudication. After briefing and oral argument, the trial court granted defendants' motion for summary judgment in December 2022. On February 24, 2023, the trial court entered judgment in defendants' favor. Plaintiff filed a timely notice of appeal.

## BACKGROUND

### *The Fight*

To provide context for the incident resulting in plaintiff's injuries, we recite the generally undisputed evidence about the incident.[3]

Plaintiff attended the June 9, 2018, races at the raceway with his mother, Linda Valdez, to watch his brother, Jacob Diamond, and his stepfather, Daniel Valdez, race Modlite cars. Plaintiff watched the races with his mother from the pit area. David Hays, his wife, Sonja Hays, and Sonja's son, Kyle Flippo, were present in the pit area, too.

After a race finished, David Hays, upset over Jacob Diamond's driving, confronted Jacob, yelling at him and using profanity. Plaintiff and his mother arrived, and David began yelling at them, with his wife, Sonja, joining in. The altercation ended without violence.

When plaintiff Linda Valdez later returned to the pit area, Sonja Hays started another verbal altercation that escalated, with Sonja charging Linda Valdez and shoving

---

[3]The parties provide similar background in their appellate briefs. Though it is relevant that the first argument (summarized below) arose due to tension over plaintiff's brother's driving, the later analysis of the release's language largely makes this fact irrelevant. Thus, this background is described as "context."

4.

her with both hands.  David Hays lunged between the two women and shoved Linda to the ground.  Seeing this, plaintiff ran to his mother, but Kyle Flippo intercepted him and punched his chin.  Plaintiff fell to the ground, cracking his skull in three places upon impact and causing subdural and internal bleeding.

***Motion for Summary Judgment***

Defendants' separate statement of undisputed material facts in support of their motion for summary judgment asserted they were entitled to summary judgment, in relevant part, because plaintiff signed an express waiver, release, and assumption of risk prior to attending the racing event where he was injured.[4]

Defendants submitted the following relevant material facts, which were undisputed by plaintiff.

Plaintiff signed a document titled "Release and Waiver of Liability, Assumption of Risk and Indemnity Agreement" on June 9, 2018, for admission to the "pits" at the raceway.  The release was included in the evidence supporting defendants' motion and its terms are set forth in part II.C. of this opinion.[5]  As indicated by its title, the release protected defendants in three ways.  First, the persons signing the document, for themselves, their heirs and next of kin, released and waived the liability specified.  Second, they expressly assumed the risks described.  Third, they agreed to indemnify and hold harmless the releasees for certain losses, damage and liability.  Plaintiff suffered his injuries that same day while on the premises of the Bakersfield Speedway in the pits, a restricted area of the raceway, following a race.

---

[4]Defendants also asserted four additional grounds for summary adjudication of plaintiff's causes of action:  (1) defendants had no duty to provide increased security to prevent fights; (2) defendants' service of alcohol at the event was not a proximate cause of plaintiff's injuries; (3) consumption of alcohol furnished by defendants was not a factor contributing to the fight that caused plaintiff's injuries; and (4) defendants provided adequate emergency medical support for plaintiff.  We do not reach these other grounds.

[5]Though plaintiff objected to the admission of the release, the trial court overruled the objection.  Plaintiff does not challenge this ruling on appeal.

Defendants argued the release precluded plaintiff from establishing that defendants owed him any duty, a necessary element for his negligence causes of action. Defendants argued that the release broadly covered any negligence, including negligent rescue operations, and injuries that might be sustained in restricted areas like the pit, even if the injured party might not know of that particular risk. Defendants argued that the release did not violate public policy and was thus enforceable.

**Plaintiff's Opposition**

Plaintiff's separate statement in opposition to defendants' motion for summary judgment disputed defendants' assertion that he released them from liability "for injuries he might sustain during the running of the race event if caused by negligence and negligent rescue operations." Plaintiff interpreted the release to mean (1) he "released only Scott Schweitzer and Schweitzer Motorsports Productions," not all defendants, and (2) those two defendants were released only from liability for "injuries arising from or relating to the event(s)." Plaintiff's separate statement asserted he "was not injured during the running of a race event or while engaged in any activity associated with the operation of a motor vehicle" but rather by "[a] violent attack" that was "not reasonably related to racing or the running of a racing event." Plaintiff also asserted no races were in progress when Kyle Flippo blindsided him with a punch.

Plaintiff's memorandum of points and authorities contended the required act of negligence resulting in the injury "be *reasonably related* to the object or purpose for which the release was signed." Plaintiff argued that the act of punching another person was "not reasonably related to the purpose for which [he] signed the release—to watch racing in the pits." Plaintiff relied extensively on *Sweat*, in which this court decided that injuries resulting from collapsing bleachers at a raceway were not reasonably related to the purpose of the release in that case. Plaintiff contended the trial court should rule in his favor because "the facts and issues in this matter are nearly identical to those adjudicated in *Sweat*."

6.

### Defendants' Reply

Defendants asserted plaintiff's injuries were covered by the release because the injuries arose out of or were related to the racing activities. Defendants argued the fight occurred because there had been a race and those involved in the fight were with teams or were related to the drivers and the argument arose over what happened on the track. Thus, defendants concluded the fight would not have occurred without racing. Defendants distinguish *Sweat* by asserting there was no true relationship between the integrity of the bleachers and racing—that is, the collapse of the bleachers was not a race-dependent incident.

### The Hearing

After the trial court announced its tentative ruling to grant defendants' motion for summary judgment based on the scope of the release, plaintiff's counsel argued "the release is only enforceable against the plaintiff if the injury producing act is reasonably related to the purpose of the agreement that was signed," which was "the hazards of racing." Counsel emphasized *Sweat*, arguing this case was materially like *Sweat*, where the plaintiff had signed a release to go into the speedway's pit area. Counsel characterized the language in the release as broad and encompassing anything and any injury that happened within the race. He argued the court in *Sweat* evaluated whether the injury sustained when the bleachers collapsed was reasonably related to the hazards of racing and found it was not.

Counsel further argued "there's clearly ambiguity in this [release] regarding the scope of it, regarding what the hazards of racing are between the two parties, and if there's any ambiguity at all in any contract, the ambiguity is construed against the drafter."

Counsel also argued a release does not protect against liability for gross negligence and there was clear gross negligence by defendants.[6] The trial court stated, "[T]he complaint does not allege gross negligence and your opposition did not raise the theory of gross negligence." Counsel responded: "Yeah, but it's the moving party's burden. The moving party … has to put in admissible evidence which establishes that we cannot meet an essential element in our claim, and the moving parties do not meet their burden." Plaintiff's counsel's argument did not address the absence of a gross negligence allegation in the complaint or the absence of a gross negligence argument in his opposition papers.

In response, defendants' counsel attempted to distinguish *Sweat* from the present case. Counsel also argued that plaintiff's injuries were reasonably related to the purpose of the release because those injuries occurred from a fight that was part of the racing environment. Counsel also argued the gross negligence argument was inappropriately raised for the first time at the hearing.

***Trial Court's Decision***

The trial court overruled plaintiff's evidentiary objections, sustained defendants' evidentiary objections, and granted defendants' motion on the ground there were no triable issues of fact "as to the first, second and third causes of action based upon Plaintiff having signed a pre-event waiver and release of liability agreement on June 9, 2018." The court determined "the language of the release is not limited to racing, or the operation of a motor vehicle as contended by Plaintiff." The court stated the release's language was "clear and unequivocal and is broad in scope, and is understood by the Court to include actions arising under the allegations made in this instance."

---

[6] "[N]o published California case has upheld … an agreement purporting to release liability for future *gross* negligence." (*City of Santa Barbara v. Superior Court* (2007) 41 Cal.4th 747, 758; see *id.* at p. 777.) "[A]n agreement made in the context of sports or recreational programs or services, purporting to release liability for future gross negligence, generally is unenforceable as a matter of public policy." (*Id.* at p. 751.)

8.

The trial court rejected plaintiff's gross negligence argument because it "was not alleged in the complaint and was not mentioned in opposition to the motion for summary judgment." In the opening and reply briefs on appeal, plaintiff neither contests the trial court's finding of forfeiture nor argues that defendants' purported conduct constituted gross negligence.

## DISCUSSION

### I.  Standard of Review

A motion for summary judgment "shall be granted if all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (Code Civ. Proc., § 437c, subd. (c).) When reviewing the grant of a motion for summary judgment, appellate courts "independently review the record and apply the same rules and standards as the trial court." (*Powell v. Kleinman* (2007) 151 Cal.App.4th 112, 121.) The applicable rules and standards are incorporated into a three-step analysis. (*Brantley v. Pisaro* (1996) 42 Cal.App.4th 1591, 1602; see Eisenberg et al., Cal. Practice Guide: Civil Appeals and Writs (The Rutter Group 2024), ¶ 8:166, pp. 8-152 to 8-153 [appellate courts use same three-step analysis required of trial court].) Independent review is appropriate because whether a trial court erred in conducting this analysis and granting a motion for summary judgment presents questions of law. (*Samara v. Matar* (2018) 5 Cal.5th 322, 338.)

We independently review the trial court's interpretation of a contractual agreement, including whether contractual language is ambiguous and whether a release negated the duty element of a negligence cause of action. (See *Dameron Hospital Assn. v. AAA Northern California*, *Nevada & Utah Ins. Exchange* (2022) 77 Cal.App.5th 971, 982–983; *Brown v. Goldstein* (2019) 34 Cal.App.5th 418, 433.)

## II. Summary Judgment Was Proper

### A. Framing the Issues

The first step in reviewing a motion for summary judgment is to "identify the issues framed by the pleadings" because the motion must show "there is no factual basis for relief on any theory reasonably contemplated by the opponent's pleading." (*AARTS Productions, Inc. v. Crocker National Bank* (1986) 179 Cal.App.3d 1061, 1064; see *Brantley v. Pisaro*, *supra*, 42 Cal.App.4th at p. 1602.)

Plaintiff's complaint alleged causes of action for (1) negligence, (2) premises liability, and (3) negligent hiring, selection, approval, retention, and supervision. (The fourth cause of action against defendants alleged negligent infliction of emotional distress and was dismissed before the summary judgment motion was filed. (See fn. 3, *ante*.) Each of these causes of action is based on the elements of negligence. (See Civ. Code, § 1714, subd. (a) [all persons are legally responsible "for an injury occasioned to another by his or her want of ordinary care or skill in the management of his or her property"].) Defendants' answer included a general denial and an affirmative defense alleging the release relieved them of a duty of care.[7] For purposes of this appeal, we conclude that gross negligence was not an issue framed by the pleadings and further conclude that defendants' moving and reply papers did not need to address gross negligence. (See *Hass v. RhodyCo Productions* (2018) 26 Cal.App.5th 11, 32–33 [where complaint alleges negligence and says nothing about a release, defendant's initial showing is met by presenting evidence of the release and plaintiff's execution; the burden is on plaintiff to raise a triable issue of material fact as to gross negligence].)

---

[7]Though "often referred to as a defense, a release of future liability is more appropriately characterized as an express assumption of the risk that negates the defendant's duty of care, an element of the plaintiff's case.… '"*The result is that the defendant is relieved of legal duty to the plaintiff; and being under no duty, he cannot be charged with negligence*." [Citation.]'" (*Eriksson v. Nunnink* (2015) 233 Cal.App.4th 708, 719.)

10.

Consequently, we complete the first step of the summary judgment analysis by concluding the issue of defendants' negligence is "framed by the pleadings" and defendants' motion must show "there is no factual basis for relief" on plaintiff's causes of action for negligence. (*AARTS Productions*, *Inc. v. Crocker National Bank*, *supra*, 179 Cal.App.3d at p. 1064.)

**B.      Shifting Burdens and Triable Issues of Fact**

The second step of the summary judgment analysis requires the court to determine whether the moving party has carried its initial burden of production and made a prima facie showing of the nonexistence of any triable issue of material fact. (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850.) If the moving party carries the burden of production, the court reaches the third step of the analysis and determines whether the opposing party has met its burden of production and shown the existence of a triable issue of material fact. (*Ibid*.)

When, as here, a defendant moves for summary judgment, it has the "burden of showing [each] cause of action has no merit." (Code Civ. Proc., § 437c, subd. (p)(2).) A defendant can carry this burden by showing "that one or more elements of the cause of action … cannot be established." (*Ibid*.) Defendants' motion for summary judgment asserts the element of a legal duty cannot be established because plaintiff signed an exculpatory release for defendants' future negligence. Thus, defendants will have met their initial burden by establishing the existence of a release covering plaintiff's injuries and plaintiff's execution of the release. (See *Hass v. RhodyCo Productions*, *supra*, 26 Cal.App.5th at pp. 32–33 [defendant's initial showing where plaintiff's complaint says nothing about the release or gross negligence].)

The parties did not dispute, below or on appeal, that plaintiff signed the release. Consequently, if the release covers the wrongful conduct alleged and is otherwise enforceable, it will negate an essential element of plaintiff's claims for negligence.

### C.    The Release Bars Plaintiff's Negligence Claims

"[F]or a release of liability to be held enforceable against a plaintiff, [1] it 'must be clear, unambiguous and explicit in expressing the intent of the parties' [citation]; [2] the act of negligence that results in injury to the releas[or] must be reasonably related to the object or purpose for which the release is given [citation]; and [3] the release cannot contravene public policy [citation]." (*Sweat*, *supra*, 117 Cal.App.4th at pp. 1304–1305; accord, *Huverserian v. Catalina Scuba Luv*, *Inc.* (2010) 184 Cal.App.4th 1462, 1469.)

"A release need not be perfect to be enforceable." (*Sweat*, *supra*, 117 Cal.App.4th at p. 1305.)  As explained *post*, we conclude the release meets the three requirements and, thus, is enforceable against plaintiff's negligence claims.

#### 1.    *Clarity, Ambiguity, and Explicit Intent*

In *Madison v. Superior Court* (1988) 203 Cal.App.3d 589, the court explained the requirement that a release be clear, unambiguous, and explicit in expressing the parties' intent by stating "the language used 'must be clear, explicit and comprehensible in each of its essential details.  Such an agreement, read as a whole, must clearly notify the prospective releasor or indemnitor of the effect of signing the agreement.'" (*Id*. at p. 598.)

We apply the general principles of contractual construction to interpret a release. (*Benedek v. PLC Santa Monica* (2002) 104 Cal.App.4th 1351, 1357 (*Benedek*).)  We first determine if a release contains an ambiguity:  "'[a]n alternative, semantically reasonable, candidate of meaning of a writing.'" (*Ibid*.; see *Joseph v. City of Atwater* (2022) 74 Cal.App.5th 974, 982 ["threshold question when interpreting a written contract is whether the text is ambiguous—that is, reasonably susceptible to more than one interpretation"].)  An ambiguity can be patent, on the writing's face, or latent, based on extrinsic evidence. (*Benedek*, *supra*, at p. 1357.)  Thus, evidence of the circumstances surrounding the release's execution may reveal an ambiguity not apparent on its face. (*Ibid*.; see Civ.

Code, § 1647; Code Civ. Proc., § 1860.)  Any ambiguity in a release is usually construed against its drafter.  (*Benedek*, *supra*, at p. 1357; see Civ. Code, § 1654.)

Whether the provisions of a contract, including a release, are clear and unambiguous is a question of law, not of fact.  (*Madison v. Superior Court*, *supra*, 203 Cal.App.3d at p. 598.)  Consequently, we conduct an independent review to determine whether the release is ambiguous.  (See *Joseph v. City of Atwater*, *supra*, 74 Cal.App.5th at p. 982 ["Whether contractual text is ambiguous presents a question of law subject to our independent review"].)

### a.    Text of the release

The release provides in relevant part:

"IN CONSIDERATION of being permitted to compete, officiate, observe, work, or participate in any way in the EVENT(S) or being permitted to enter for any purpose any RESTRICTED AREA (defined as any area requiring special authorization, credentials, or permission to enter or any area to which admission by the general public is restricted or prohibited), EACH OF THE UNDERSIGNED … :

"1.  Acknowledges, agrees, and represents that he has or will immediately upon entering any of such RESTRICTED AREAS, and will continuously thereafter, inspect the RESTRICTED AREAS which he enters, and he further agrees and warrants that, if at any time, he is in or about RESTRICTED AREAS and he feels anything to be unsafe, he will immediately advise the officials of such and if necessary will leave the RESTRICTED AREAS and/or refuse to participate further in the EVENT(S).

"2.  HEREBY RELEASES, WAIVES, DISCHARGES AND COVENANTS NOT TO SUE … 'Releasees,' FROM ALL LIABILITY TO THE UNDERSIGNED … FOR ANY AND ALL LOSS OR DAMAGE, AND ANY CLAIM OR DEMANDS THEREFOR ON ACCOUNT OF INJURY TO THE PERSON OR PROPERTY OR RESULTING IN DEATH OF THE UNDERSIGNED ARISING OUT OF OR RELATED TO THE EVENT(S), WHETHER CAUSED BY THE NEGLIGENCE OF THE RELEASEES OR OTHERWISE.

"3.  HEREBY AGREES TO INDEMNIFY AND SAVE AND HOLD HARMLESS the Releasees .…

"4. HEREBY ASSUMES FULL RESPONSIBILITY FOR ANY RISK OF BODILY INJURY … arising out of or related to the EVENT(S) whether caused by the NEGLIGENCE OF RELEASEES or otherwise.

"5. HEREBY acknowledges that THE ACTIVITIES OF THE EVENT(S) ARE VERY DANGEROUS and involve the risk of serious injury and/or death and/or property damage. Each of THE UNDERSIGNED, also expressly acknowledges that INJURIES RECEIVED MAY BE COMPOUNDED OR INCREASED BY NEGLIGENT RESCUE OPERATIONS OR PROCEDURES OF THE RELEASEES.

"6. HEREBY agrees that this Release … extends to all acts of negligence by the Releasees, INCLUDING NEGLIGENT RESCUE OPERATIONS and is intended to be as broad and inclusive as is permitted by the laws of the State or Province in which the Event(s) is/are conducted and that if any portion thereof is held invalid, it is agreed that the balance shall, notwithstanding, continue in full legal force and effect.

"I HAVE READ THIS RELEASE …, UNDERSTAND ITS TERMS, UNDERSTAND THAT I HAVE GIVEN UP SUBSTANTIAL RIGHTS BY SIGNING IT, AND HAVE SIGNED IT FREELY AND VOLUNTARILY WITHOUT ANY INDUCEMENT, ASSURANCE OR GUARANTEE BEING MADE TO ME AND INTEND MY SIGNATURE TO BE A COMPLETE AND UNCONDITIONAL RELEASE OF ALL LIABILITY TO THE GREATEST EXTENT ALLOWED BY LAW."

### b.     Extrinsic evidence

We begin our examination of the question of ambiguity by addressing the role of extrinsic evidence in that evaluation. The principles defining that role are well established.

"The decision whether to admit parol evidence involves a two-step process. First, the court provisionally receives (without actually admitting) all credible evidence concerning the parties' intentions to determine 'ambiguity,' i.e., whether the language is 'reasonably susceptible' to the interpretation urged by a party. If in light of the extrinsic evidence the court decides the language is 'reasonably susceptible' to the interpretation urged, the extrinsic evidence is then admitted to aid in the second step—interpreting the contract." (*Winet v. Price* (1992) 4 Cal.App.4th 1159, 1165; see *Pacific Gas & E. Co. v. G. W. Thomas Drayage etc. Co.* (1968) 69 Cal.2d 33, 39–40.)

14.

When the second step is reached—that is, the court interprets the contract to resolve its ambiguities—the court determines whether the competent extrinsic evidence is in conflict. If there is no conflicting extrinsic evidence as to the parties' intent, the interpretation of a release is a question of law for the court. (*Salehi v. Surfside III Condominium Owners Assn.* (2011) 200 Cal.App.4th 1146, 1159.) If the extrinsic evidence is uncontroverted, but there are conflicting inferences that may be drawn from that evidence, the interpretation of the release remains solely a judicial function. (*Hess v. Ford Motor Co.* (2002) 27 Cal.4th 516, 527 [extrinsic evidence was uncontroverted].) If there are conflicts in the extrinsic evidence, the determination of the credibility of that evidence and the interpretation of the contract are questions of fact. (*City of Hope National Medical Center v. Genentech, Inc.* (2008) 43 Cal.4th 375, 395.)

The parties have acknowledged the role of conflicting evidence in interpreting ambiguous language. Plaintiff's reply brief stated: "Where, as here, there is no conflicting parol evidence concerning the interpretation of a release, the court of appeal independently determines whether the release negated the duty element of plaintiff's cause of action." Similarly, defendants asserted "the trial court did not interpret the Release with the aid of conflicting parol evidence."

The parties' appellate briefing, however, does not acknowledge the principles that (1) whether contractual language is ambiguous is a question of law, (2) an ambiguity can be either patent or latent, and (3) extrinsic evidence is provisionally received by a court reviewing a contract for an ambiguity. Moreover, plaintiff has not identified the specific words or phrases in the release that he contends are ambiguous. As a result, he has not shown how particular language in the release is reasonably susceptible to more than one interpretation. Rather, he cites *Solis v. Kirkwood Resort Co.* (2001) 94 Cal.App.4th 354 to support his contention that, where the releasor "identifies 'alternative, semantically reasonable' construction of the waiver, the evidence creates a triable issue of fact

15.

concerning whether and to what extent the waiver applies to release[or]'s claims," and then makes general arguments.

An example of plaintiff's failure to identify specific textual ambiguity is his contention that "there are at least triable issues of fact as to whether the language of the release contemplated the type of injuries suffered by Plaintiff. In opposition to the motion for summary judgment, Plaintiff offered evidence creating a triable issue of fact as to whether an injury from a blindsided punch due to a lack of security and other negligent measures by Defendants was sufficiently related to the purpose of the release, much less explicitly included in the risks inherent in or even contemplated by the activity of auto racing and its observation." Plaintiff also contends "the language of the release … does not unambiguously exempt Defendants from liability for any injury suffered by [plaintiff] while in the pits," and "a person signing the release in the present case cannot be deemed to have waived any risk other than those reasonably related to the dangerous activity of auto racing to those attendees in close proximity (in the pits) to the actual running of the race."

Plaintiff's approach to the ambiguity of the release does not attempt to establish a latent ambiguity based on extrinsic evidence. Consequently, we interpret his arguments as asserting the purported ambiguity is patent (i.e., appears on the face of the document) and the resolution of that facial ambiguity is aided by parol (i.e., extrinsic) evidence that is not in conflict. As a result, we will not analyze whether extrinsic evidence establishes the existence of a latent ambiguity, but will examine text of the release to determine if it contains a facial ambiguity. Only if we identify a facial ambiguity, will we consider the evidentiary issues involving the extrinsic evidence that might aid our resolution of such an ambiguity. Those evidentiary issues might limit the extrinsic evidence evaluated because the trial court sustained all the objections made by defendants to the evidence submitted by plaintiff and plaintiff has not challenged those evidentiary rulings on appeal.

16.

### c.     The release is not facially ambiguous

The language in a contract "'cannot be found to be ambiguous in the abstract.'" (*Bank of the West v. Superior Court* (1992) 2 Cal.4th 1254, 1265, italics omitted.)  The language "'must be construed in the context of that instrument as a whole, and in the circumstances of that case.'" (*Ibid*.)  Generally, we interpret contractual language in its "ordinary and popular sense." (Civ. Code, § 1644.)  Courts often look to dictionary definitions for a word's ordinary and popular meaning.  (See, e.g., *Bank of the West*, *supra*, at p. 1265; *People ex rel. Lockyer v. R.J. Reynolds Tobacco Co*. (2004) 116 Cal.App.4th 1253, 1263 [courts typically look to dictionaries to determine a word's common meaning].)  Under these principles, a disagreement concerning the meaning of a word or phrase, or the fact that a word or phrase isolated from its context is susceptible to more than one meaning, does not make the language ambiguous.  (*Foster-Gardner*, *Inc. v. National Union Fire Ins. Co*. (1998) 18 Cal.4th 857, 868.)

The second numbered paragraph of the release stated plaintiff "hereby releases, waives, discharges, and covenants not to sue [a long list of persons referred to collectively as] 'Releasees,' from all liability to the undersigned … for any and all loss or damage, and any claim or demands therefor on account of injury to the person … of the undersigned arising out of or related to the event(s), whether caused by the negligence of the releasees or otherwise." (Capitalization omitted.)

Plaintiff does not contend on appeal that defendants are not "releasees."  Also, it is uncontested that plaintiff's complaint seeks to impose liability on defendants for loss or damage on account of an injury to the person of plaintiff and has alleged the injury was caused by the negligence of releasees.

The release used the word *all* to modify *liability*.  "All" is broad and unambiguous. It is a word of inclusion, not exclusion, and means "'the whole of' or 'the greatest quantity'; 'the whole number' or 'sum of'; and 'every member or individual component thereof.'" (*City of Ukiah v. Board of Trustees* (1961) 195 Cal.App.2d 344, 347; see

17.

*Church v. Jamison* (2006) 143 Cal.App.4th 1568, 1580; *Dalton v. Baldwin* (1944) 64 Cal.App.2d 259, 263 [statute's phrase "'all the rights of'" excluded no right whatever].) The release used *any* and *all* to modify *loss or damage*. The word *any* also is broad and unambiguous—it means "'of whatever kind'" or "'without restriction.'" (*Zabrucky v. McAdams* (2005) 129 Cal.App.4th 618, 628.)

As a result of the breadth of the language referring to liability and loss or damage, the parties' dispute about the meaning of the release and waiver provision and its scope centers on the phrase "ARISING OUT OF OR RELATED TO THE EVENT(S)." This phrase also appears in the assumption of risk provision in the release's fourth numbered paragraph. Our analysis of ambiguity first addresses the phrase "ARISING OUT OF OR RELATED TO" and then considers the meaning of "THE EVENT(S)."

The phrase "arising out of" generally means in relation to "circumstances" or "matters generally," "[t]o spring, originate, or result from" and is "used … to introduce a circumstance … arising out of an event, statement, etc." (Oxford English Dict. Online (2024) sense III.17 <https://doi.org/10.1093/OED/3071387586> [as of Mar. 24, 2025], archived at <https://perma.cc/386T-XST5>; *id.*, sense III.18.a <https://doi.org/10.1093/OED/4173120690> [as of Mar. 24, 2025], archived at <https://perma.cc/DX3A-3H6D>.)

"Related" means, relevant here, "[c]onnected or having relation to something else" or "having mutual relation" when used in its predicative sense with "to." (Oxford English Dict. Online, *supra*, sense 2.a.i, 2.a.ii. <https://doi.org/10.1093/OED/6513618542> [as of Mar. 24 2025], archived at <https://perma.cc/WX5Q-2ZES>.) Another dictionary states the verb "relate" means "to show or establish a logical or causal connection between." (Webster's 3d New Internat. Dict. (1986) p. 1916.)

The phrases "arising out of" and "related to" are used in many legal contexts. Our Supreme Court addressed the meaning of "related" in an insurance policy stating that

18.

"'[t]wo or more claims arising out of … a series of related acts, errors or omission shall be treated as a single claim.'" (*Bay Cities Paving & Grading*, *Inc. v. Lawyers' Mutual Ins. Co.* (1993) 5 Cal.4th 854, 859, italics omitted (*Bay Cities*).) The Court of Appeal had assumed the term "related" was ambiguous because it was not defined in the policy. (*Id.* at p. 866.) The Supreme Court disagreed. (*Id.* at p. 868.) The court stated the proper inquiry was "whether the word was ambiguous in the context of *this* policy and the circumstances of *this* case." (*Id.* at p. 868.) The court determined "related" was not ambiguous in the context presented, stating:

> "We agree with the court in *Gregory* [*v. Homes Ins. Co.* (7th Cir. 1989) 876 F.2d 602], that the term 'related' as it is commonly understood and used encompasses both logical and causal connections. Restricting the word to only causal connections improperly limits the word to less than its general meaning. 'Related' is a broad word, but it is not therefore a necessarily ambiguous word. We hold that, as used in this policy and in these circumstances, 'related' is not ambiguous and is not limited only to causally related acts.

> "We do not suggest, however, that, in determining the amount of coverage, the term 'related' would encompass every conceivable logical relationship. At some point, a relationship between two claims, though perhaps 'logical,' might be so attenuated or unusual that an objectively reasonable insured could not have expected they would be treated as a single claim under the policy. In the present case, there is no attenuation or surprise to the insured. The two errors by the attorney are 'related' in multiple respects. They arose out of the same specific transaction, the collection of a single debt. They arose as to the same client. They were committed by the same attorney. They resulted in the same injury, loss of the debt. No objectively reasonable insured under this policy could have expected that he would be entitled to coverage for two claims under the policy." (*Bay Cities*, *supra*, 5 Cal.4th at p. 873.)

The parties have cited no case law, treatise, or dictionary defining "arise," "arising," "relate" or "related." Further, they have not specifically argued that a word in or the entire phrase "arising out of or related to" is ambiguous or unambiguous.

We have considered the release as a whole and the context in which it was made and conclude the word "related" is unambiguous and, in accordance with the common understanding of its meaning, it encompasses both logical and causal connections. The adoption of this broad definition is supported by other provisions in the release. The sixth numbered paragraph states the signor agrees the release "is intended to be as broad and inclusive as is permitted by the laws of the State … in which the Event(s) is/are conducted." Also, the unnumbered paragraph immediately above the signatures stated: "I HAVE READ THIS RELEASE … AND INTEND MY SIGNATURE TO BE A COMPLETE AND UNCONDITIONAL RELEASE OF ALL LIABILITY TO THE GREATEST EXTENT ALLOWED BY LAW." Also, plaintiff's signature is over the watermarked words "I HAVE READ THIS RELEASE." These explicit statements of the parties' intent clearly and unambiguously establish that the term "related" should be given a broad interpretation and it is not ambiguous simply because narrower meanings are possible in other contexts.

The first numbered paragraph of the release also supports a broad interpretation of the term "related." That paragraph required plaintiff to immediately advise officials and, if necessary, leave a restricted area if "he feels anything to be unsafe." The pit area in which plaintiff was injured was a restricted area. The word "anything" is broad and, therefore, the paragraph does not expressly or impliedly restrict the release's scope.

Consequently, we conclude the use of "arising out of or related to" is broad, not narrow, and does not create an ambiguity. It encompasses injuries having a causal connection to the events *or* having a logical connection to the events.

To the extent that plaintiff's arguments imply the phrase is ambiguous because it could be interpreted to require a *direct* causal connection between an injury and the events, we conclude that interpretation is not reasonable in the circumstances of this case. The argument that only injuries *directly* arising out of or related to the events are released was made in a case involving what appears to be the same preprinted release form.

20.

(*Hardy v. St. Clair* (1999) 1999 Me. 142 [739 A.2d 368], overruled on another ground by *Brown v. Crown Equip. Corp.* (2008) 2008 Me. 186 [960 A.2d 1188, 1194–1195].)  In *Hardy*, a member of a pit crew supporting a race car was injured when a section of bleachers collapsed.  The Maine high court acknowledged that the race events did not cause the bleachers to collapse but concluded the plaintiff's "injuries were related to the events and indirectly resulted from them." (*Hardy*, *supra*, 739 A.2d at p. 370.)  As a result, the court affirmed the summary judgment granted to the defendant raceway on the plaintiff's negligence claims. (*Id*. at p. 369.)

Next, we consider whether the term "THE EVENT(S)" is ambiguous.  The trial court stated the release included "risks arising out of or related to the racing activities."  Thus, the court interpreted "THE EVENT(S)" to mean the racing activities.  Plaintiff adopts the same interpretation, asserting:  "The event, as described in the Release, was automobile racing, not physical altercations."  Defendants' appellate brief uses the phrase "related to the Speedway's events on June 9, 2018" and asserts it is "clear that the injury arose from or was related to the Speedway's events of the day, even if restricted to 'racing.'"

"Event" can mean, as relevant here, (1) "a social occasion or activity" or (2) "any of the contests in a program of sports." (Merriam-Webster's Dict. Online (2025) <https://www.merriam-webster.com/dictionary/event> [as of Mar. 24, 2025], archived at <https://perma.cc/QH5H-V87J>.)  An example of such contests, some of which involve a different type of racing, are "track and field" events. (Webster's 3d New Internat. Dict., *supra*, p. 788.)

The release does not define the term "EVENT(S)."  However, immediately below its title, the release has a blank line for a "DESCRIPTION AND LOCATION OF SCHEDULED EVENTS."  Handwritten above that line is the venue's name: "Bakersfield Speedway."  On the blank line for "DATE RELEASE SIGNED" is handwritten "June 9, '18."  Thus, the release identified the location and date, but did not

21.

specifically describe the scheduled events. (Cf. *Holzer v. Dakota Speedway, Inc.* (2000) 2000 S.D. 65 [610 N.W.2d 787, 802] [same form of release completed with handwritten "Stock Lake County Speedway," which indicated the events were stock car races]; *Hardy v. St. Clair*, *supra*, 739 A.2d at p. 370 ["The term 'EVENT(S)' refers to Wiscasset Raceway's 'Regular Races & 50 Lap Heavyweight'"].)

Other cases involving racing and the same or nearly identical form of release have addressed the meaning of the term "event(s)." In *Grabill v. Adams County Fair and Racing Assn.* (Iowa 2003) 666 N.W.2d 592, the plaintiffs sued several defendants for injuries resulting from a fireworks demonstration at the speedway. (*Id.* at p. 593.) The fireworks were discharged in the pit area after a parade lap. Some of the fireworks flew horizontally, exploded in the pit area, and injured the plaintiffs. (*Ibid.*) "The release specified the description and location of the 'event(s)' as "Adams Co. Speedway, Corning, Ia.'" (*Id.* at p. 596.) The court rejected the plaintiffs' "contention that the release waived only damages caused by racing" because that content was contrary to the broad language used in the release. As a result, the court affirmed the summary judgment granted to the defendants. (*Ibid.*; see *Werdehoff v. General Star Indem. Co.* (Wis.App. 1999) 229 Wis.2d 489, 502–503 [600 N.W.2d 214, 220] [event name, "Road America," written over space for "'description and location of scheduled event(s)'"; the court concluded the release "was signed in contemplation of the motorcycle races to be held that weekend"].)

Based on the way the release was filled out, the dictionary definitions, and the case law, we conclude the term "EVENT(S)" is not ambiguous in the context of this case. It refers to the races held at the Bakersfield Speedway on June 9, 2018.

### d.    Application of the unambiguous language

Having resolved the threshold legal question by concluding the release's language is not ambiguous, we next apply the release's meaning to the facts of this case. (See

22.

*Scheenstra v. California Dairies*, *Inc.* (2013) 213 Cal.App.4th 370, 390–391 [determining the meaning of a writing can be treated as distinct from applying that meaning to the facts presented].)  Combining the meanings of the phrase "arising out of or related to" and the word "events," the question presented is whether plaintiff's injury has a logical or causal connection to the races held at the Bakersfield Speedway on June 9, 2018.

Based on the undisputed facts of this case, we find as a matter of law that plaintiff's injury is "related to" the races.  In particular, the facts establish the "but for" test for a causal connection is satisfied.  (See generally *Viner v. Sweet* (2003) 30 Cal.4th 1232, 1239 [the "but for" test is subsumed in California's "substantial factor" causation standard].)  But for the races, plaintiff and Kyle Flippo would not have been in the speedway's pit area on that date and, as a result, the altercations in the pit area that resulted in plaintiff being punched would not have occurred.  As discussed earlier, a *direct* causal link to the racing activity is not required by the release's "related to" language.  Thus, the indirect link between the races and the incident supplies the requisite connection.

We recognize that at some point the connection or relationship "might be so attenuated or unusual" that an objectively reasonable person would not expect the release to cover the injuries.  (*Bay Cities*, *supra*, 5 Cal.4th at p. 873.)  For example, if after the events had concluded that day, defendants negligently rear-ended plaintiff's vehicle while at a stop light a mile from the speedway, the resulting injury would have a "but for" connection to the events because defendants and plaintiff would not have been at that intersection at that time if no events had been scheduled that day.  In this case, the link is not attenuated because the injuries occurred in a restricted area of the speedway.

Our application of the term "related to" to the facts of this case is consistent with the Maine high court's determination that a pit crew member's injuries from falling when a section of bleachers collapsed were covered by a release like ours.  Though he "did not receive injuries *directly* 'arising out of or related to the events,' his injuries were related

23.

to the events and indirectly resulted from them.  The race events did not directly cause the bleachers to collapse under [the plaintiff].  However, had [the plaintiff] not been participating in the race events, he would not have been on the section of bleachers that collapsed because that section was reserved for members of the pit crews and not open to the general public." (*Hardy v. St. Clair*, *supra*, 739 A.2d at p. 370.)

### e.    Other arguments

Here we address certain points raised by plaintiff that might imply the release is ambiguous.  For instance, plaintiff refers to the express acknowledgment in the release's fifth numbered paragraph that states "THE ACTIVITIES OF THE EVENT(S) ARE VERY DANGEROUS and involve the risk of serious injury and/or death."  Plaintiff asserts this acknowledgment indicates the risk of injury assumed are those that result from being in close proximity to the dangerous activity of automobile racing and any further risk that might result from the activity of observing such a race close-up.  To the extent this argument can be viewed as offering a narrower definition of the phrase "ARISING OUT OF OR RELATED TO THE EVENT(S)" and thus creating an ambiguity, we conclude that narrower definition is not reasonable.  Had that narrower interpretation been intended, the release would not have made a broad reference to the events, but to the *activities of the* events or the *dangerous activities of* the events.  Also, the release would not have stated elsewhere that it was "intended to be as broad and inclusive as is permitted by the laws of the State … in which the Event(s) is/are conducted."  In sum, the acknowledgment of danger is not reasonably interpreted as a limitation on the broad language of the release.

Plaintiff also refers to the language in *Sweat* about the release needing to be "'explicit in expressing the intent of the parties'" (*Sweat*, *supra*, 117 Cal.App.4th at pp. 1304–1305) and implies the risk of a blindside punch was not explicitly included in the

release. We reject this implication because the explicitness requirement does not require that level of specificity.

In *Madison*, the court addressed the type of language that creates an enforceable, *explicit* release, stating: "As long as the release constitutes a clear and unequivocal waiver with specific reference to a defendant's *negligence*, it will be sufficient." (*Madison v. Superior Court*, *supra*, 203 Cal.App.3d at p. 597, italics added.) The court explained: "While it is true that the express terms of any release agreement must be applicable to the particular misconduct of the defendant (Prosser & Keeton on Torts (5th ed. 1984) § 68, pp. 483-484), that does not mean that every possible specific act of negligence of the defendant must be spelled out in the agreement or even discussed by the parties." (*Madison*, *supra*, at p. 601.)

Also, the court in *Sanchez v. Bally's Total Fitness Corp.* (1998) 68 Cal.App.4th 62, considered a release covering "'any claims for injuries or damages whatsoever to person or property of the member … arising out of or connected with the use of the fitness center.'" (*Id.* at p. 65.) The court concluded the release signed by the member was clear, unambiguous and explicit *even without a specific reference to negligence.* (*Id.* at p. 66.) Thus, the court affirmed the summary judgment granted to the fitness center. (*Id.* at p. 64.)

Here, the release and waiver provision explicitly refers to any injury "CAUSED BY THE NEGLIGENCE OF THE RELEASEES OR OTHERWISE." The assumption of risk provision uses the same language. The release used the term "negligence" a total of four times and "NEGLIGENT RESCUE OPERATIONS" twice. Consequently, we conclude the release's language is sufficient to include negligence in providing security for the events and, thus, meets the requirement of being "'explicit in expressing the intent of the parties.'" (*Sweat*, *supra*, 117 Cal.App.4th at pp. 1304–1305; see *Madison v. Superior Court*, *supra*, 203 Cal.App.3d at pp. 594, 603 [release signed by participant in

25.

scuba diving course relieved defendants from "LIABILITY FOR PERSONAL INJURY, PROPERTY DAMAGE OR WRONGFUL DEATH CAUSED BY NEGLIGENCE"].)

Consequently, we agree with the *Hardy* court's analysis of broad language identical to language in our release: "The sixth paragraph provided that the scope of the Agreement 'extends to all acts of negligence by [Wiscasset Raceway] … and is intended to be as broad and inclusive as permitted by the laws.' Further, the last portion of the Agreement indicates that [the plaintiff] intended his signature to be 'A COMPLETE AND UNCONDITIONAL RELEASE OF ALL LIABILITY TO THE GREATEST EXTENT ALLOWED BY LAW.' Even when strictly construed against Wiscasset Raceway, the Agreement 'expressly spell[s] out with the greatest particularity the intention of the parties contractually to extinguish negligence liability.'" (*Hardy v. St. Clair*, *supra*, 739 A.2d at p. 370; accord, *Grabill v. Adams County Fair and Racing Assn.*, *supra*, 666 N.W.2d at p. 596 ["ALL LIABILITY" indicative of broad release of liability]; *Werdehoff v. General Star Indem. Co.*, *supra*, 229 Wis.2d at pp. 495–497 ["all liability" and "arising out of or related to the event(s)" indicative of broad release of liability].) In sum, a reference to all acts of negligence is sufficiently explicit expression of the parties' intent.

### 2.    *Reasonable Relationship*

We next consider the requirement that "the act of negligence that results in injury to the releas[or] must be reasonably related to the object or purpose for which the release is given." (*Sweat*, *supra*, 117 Cal.App.4th at p. 1305.) In *Madison v. Superior Court*, *supra*, 203 Cal.App.3d 589, Justice Croskey explained this requirement: "If the negligent act is so related then, as a matter of law, it is reasonably foreseeable whether or not it was actually in the contemplation of either party." (*Id*. at p. 601, fn. 9.)

The scope of a release generally determines whether negligent conduct reasonably relates to the "object or purpose for which the release was given." (*Benedek*, *supra*, 104

Cal.App.4th at p. 1357.)  Though the release must apply to the negligence at issue, it need not specify "every possible specific act of negligence." (*Ibid*.)  Nor is it relevant "whether the particular risk of injury is inherent in the recreational activity to which the release applies, but rather the scope of the release." (*Ibid*.)  Because the release at issue specifically mentions the activities for which plaintiff sought entrance to the venue—observation of the race—the purpose and object of the release clearly relates to the alleged negligence arising out of conduct related to the race.

Defendants' alleged negligence in providing security at the racing events on June 9, 2018, is reasonably related to the release's purpose.  The release is worded, as noted above, to obtain a broad, unconditional waiver of *any* liability for injuries directly and indirectly arising from or related to attendance at the event on June 9, 2018, and caused by defendants' negligence.

The purpose of the release was clearly to obtain entry to the venue, including the pit area.  Plaintiff undisputedly sought entry to the event, generally, and the pit area, specifically, to participate in the event, and, per the release's terminology, "observe" his brother race.  Plaintiff wrote in the word "pit" after his signature and under the column in the release titled "duties."  His additional material facts assert he entered the speedway "through the pits to assist his brother and stepfather before their race."  This assertion clearly indicates plaintiff signed the release to not only observe but participate in the preparation for his family members' race that day.  After the race, he was injured during an altercation about his brother's racing conduct.  All participants in that altercation were in the pit area for the express purpose of attending the race.  We agree with the trial court that altercations about a sporting event are reasonably related to the purpose and object of a release that exchanges a release of liability for entry to the racing event.  Applied here, the altercation about his brother's racing conduct was reasonably related to the purpose or object of the release:  to gain entry to the venue to observe the event.

Given this, we find inapplicable plaintiff's substantial reliance upon our decision in *Sweat*, *supra*, 117 Cal.App.4th 1301. Sweat sued the owner of the Bakersfield Speedway for personal injuries suffered when he sat on pit-area bleachers and they collapsed. (*Id*. at p. 1303.) After a bifurcated bench trial, the trial court determined his injuries were reasonably related to the purpose of a release signed by Sweat, and it awarded judgment in favor of the speedway owner. (*Ibid*.) We reversed the trial court's judgment and remanded for further proceedings. (*Ibid*.)

In *Sweat*, we described the following as "[t]he pertinent language of the release prepared":

> "'IN CONSIDERATION of being permitted to enter for any purpose a RESTRICTED AREA (herein defined as … [the] pit areas …), or being permitted to … observe … the event, EACH … for himself … :

> "'1. HEREBY RELEASES, WAIVES, DISCHARGES AND COVENANTS NOT TO SUE the … track owner … from all liability to the undersigned … for any claim …, whether caused by the negligence of the releasees or otherwise while the undersigned is in or upon the restricted area and/or … observing … the event. [¶] … [¶]

> "'3. HEREBY ASSUMES FULL RESPONSIBILITY FOR AND RISK OF BODILY INJURY … due to the negligence of releasees or otherwise while in or upon the restricted area … and/or … observing … the event.

> "'EACH OF THE UNDERSIGNED expressly acknowledges and agrees that the activities of the event are very dangerous and involve the risk of serious injury and/or death and/or property damage. EACH OF THE UNDERSIGNED further expressly agrees that the foregoing release, waiver, and indemnity agreement is intended to be as broad and inclusive as permitted by the law….'" (*Sweat*, *supra*, 117 Cal.App.4th at pp. 1303–1304.)

This language, though like that in defendants' release, contains significant differences. First, defendants' release does not use "and/or," which *Sweat* found ambiguous. (*Sweat*, *supra*, 117 Cal.App.4th at p. 1305.) Second, defendants' release covered all liability for any harm arising out of or related to the event, and the releasee's

28.

entry to a restricted area for "'any purpose.'" In contrast, Sweat released the track owner only for liability for negligence "'while [he] is in or upon the restricted area and/or … observing … the event.'" (*Id.* at p. 1303.) This language relates negligence to a location, the restricted area, or an activity, observing the event, which the *Sweat* court found ambiguous. That led the *Sweat* court to conclude the release's scope only pertained to risks related to automobile racing, thus Sweat's injury was not reasonably related to the purpose of the release. But defendants' release relates the harm incurred from negligent conduct broadly: arising from or relating to the events. It critically differs from the *Sweat* release. We conclude that *Sweat* does not compel the conclusion that the negligence alleged here is not reasonably related to the purpose or object of defendants' release.

### 3. *Public Policy*

Exculpatory agreements in the recreational sports context do not implicate the public interest and therefore are not void as against public policy. (*Benedek*, *supra*, 104 Cal.App.4th at pp. 1356–1357; *Lund v. Bally's Aerobic Plus, Inc*. (2000) 78 Cal.App.4th 733, 739; *Allan v. Snow Summit, Inc*. (1996) 51 Cal.App.4th 1358, 1373.)

Nevertheless, plaintiff argues that, under *Tunkl v. Regents of University of California* (1963) 60 Cal.2d 92 (*Tunkl*), enforcement of the release would contravene public policy. Plaintiff contends the business of operating a speedway open to the public meets *Tunkl*'s factors used to determine if releases involving the public interest are void under Civil Code section 1668.[8] (*Tunkl*, at pp. 98–101.)

California courts, including our Supreme Court, have manifestly "'concluded categorically that private agreements made "in the recreational sports context" releasing

---

[8]Civil Code section 1668 states: "All contracts which have for their object, directly or indirectly, to exempt anyone from responsibility for his own fraud, or willful injury to the person or property of another, or violation of law, whether willful or negligent, are against the policy of the law."

liability for future ordinary negligence "do not implicate the public interest and therefore are not void as against public policy.""" (*Whitehead v. City of Oakland* (2024) 99 Cal.App.5th 775, 782, quoting *City of Santa Barbara v. Superior Court*, *supra*, 41 Cal.4th at pp. 759–760 & fns. 12–17 (*Santa Barbara*); see *Tunkl*, *supra*, 60 Cal.2d at p. 101 ["[O]bviously no public policy opposes private, voluntary transactions in which one party, for a consideration, agrees to shoulder a risk which the law would otherwise have placed upon the other party"].)

Tunkl sets forth six criteria to identify an agreement in which an exculpatory clause is against public policy. (1) "It concerns a business of a type generally thought suitable for public regulation"; (2) "The party seeking exculpation is engaged in performing a service of great importance to the public, which is often a matter of practical necessity for some members of the public"; (3) "The party holds himself out as willing to perform this service for any member of the public who seeks it, or at least any member coming within certain established standards"; (4) As a result of the essential nature of the service, in the economic setting of the transaction, the party invoking exculpation possesses a decisive advantage of bargaining strength against any member of the public who seeks his services"; (5) "In exercising a superior bargaining power the party confronts the public with a standardized adhesion contract of exculpation, and makes no provision whereby a purchaser may pay additional fees and obtain protection against negligence"; and (6) "Finally, as a result of the transaction, the person or property of the purchaser is placed under the control of the seller, subject to the risk of carelessness by the seller or his agents." (*Tunkl*, *supra*, 60 Cal.2d at pp. 98–101, fns. omitted.)

California courts have further clarified that "[u]nder *Tunkl*, … determining whether a release of liability affects the public interest, and is thus void as a matter of public policy, requires analysis of the transaction giving rise to the contract—*not* the allegedly negligent conduct by the party invoking the release." (*Gavin W. v. YMCA of*

30.

*Metropolitan Los Angeles* (2003) 106 Cal.App.4th 662, 670.) "*Tunkl*'s public interest analysis focuses upon the overall transaction—with special emphasis upon the importance of the underlying service or program, and the relative bargaining relationship of the parties—in order to determine whether an agreement releasing future liability for *ordinary* negligence is unenforceable." (*Santa Barbara*, *supra*, 41 Cal.4th at p. 762.)

Put differently, *Tunkl*'s analysis of whether a release affects the public interest is focused, in important part, on the position the releasee is placed in. For example, *Tunkl*'s "rough outline" of the "type of transaction in which exculpatory provisions will be held invalid" explains, as a characteristic of this transaction, that "[a]s a result of the essential nature of the service, in the economic setting of the transaction, the party invoking exculpation possesses a decisive advantage of bargaining strength against any member of the public who seeks his services." (*Tunkl*, *supra*, 60 Cal.2d at p. 100.) Rather, because the nature of the service is essential to the public, members of the public are at a distinct bargaining disadvantage because, by needing the service, they lack a meaningful capacity to say "no."

*Okura v. United States Cycling Federation* (1986) 186 Cal.App.3d 1462 (*Okura*) helpfully summarizes the types of transactions subject to *Tunkl*'s application. There the Second Appellate District, Division Five, upheld summary judgment for defendants South Bay Wheelman, Inc., and United States Cycling Federation based on a standard entry blank and release form. (*Okura*, at pp. 1464–1465.) The *Okura* plaintiff claimed the release he signed to enter a bicycle race in which he was injured was void under *Tunkl*. The *Okura* court disagreed:

> "Measured against the public interest in hospitals and hospitalization, escrow transactions, banking transactions and common carriers, this transaction is not one of great public importance. There is no compelling public interest in facilitating sponsorship and organization of the leisure activity of bicycle racing for public participation. The number of participants is relatively minute compared to the public use of hospitals, banks, escrow companies and common carriers. Also, the risks involved in

31.

running such an event certainly do not have the potential substantial impact on the public as the risks involved in banking, hospitals, escrow companies and common carriers. The service certainly cannot be termed one that 'is often a matter of practical necessity for some members of the public.'" (*Okura*, *supra*, 186 Cal.App.3d at p. 1467;[9] accord, *Buchan v. United States Cycling Federation, Inc.* (1991) 227 Cal.App.3d 134, 151.)

For purposes of public interest analysis, we see no meaningful distinction between the public benefit of an automobile race and a bicycle race. Neither compare to the practical necessity of banks, hospitals, childcare services, or common carriers: essential services upon which nearly all individuals rely. That entertainment and leisure are important to human flourishing does not elevate automobile racing, or entertainment more generally, to the level of practical necessity required under *Tunkl*. Given there are myriad opportunities for entertainment, broadly defined, members of the public have a meaningful choice to participate in bicycle or automobile races, unlike other essential industries like banking, escrow services, healthcare, and common carriers.

For this reason, we disagree with plaintiff's argument that "watching sports and attending large concerts and entertainment events" should be viewed as matters of great importance to the public under *Tunkl*. Plaintiff provides no citation to authorities holding otherwise.

We also disagree with plaintiff's other argument that defendants' business is suitable for public regulation as meant by *Tunkl*. Plaintiff contends the business is suitable for public regulation because it requires licenses to serve alcoholic beverages and is subject to health and safety regulation under local ordinances. But we decline "to place undue emphasis" on local alcohol, health, and safety ordinances that do not indicate a

---

[9]The cases cited by *Okura* include *Westlake Community Hospital v. Superior Court* (1976) 17 Cal.3d 465 (release regarding hospital-physician relationship), *Vilner v. Crocker National Bank* (1979) 89 Cal.App.3d 732 (release related to night deposits at banking institutions), *Akin v. Business Title Corp.* (1968) 264 Cal.App.2d 153 (escrow companies). *Okura* also observed that exculpatory agreements are void as to common carriers. (Rest.2d Contracts, § 195, com. (a), p. 66.) (*Okura*, *supra*, 186 Cal.App.3d at p. 1467.)

regulatory scheme. (See *YMCA of Metropolitan Los Angeles v. Superior Court* (1997) 55 Cal.App.4th 22, 29 [fact that one aspect of YMCA Senior Program was to provide food subject to Health & Saf. Code sanitation requirements did "not mean the Senior Program was subject to government regulation" as described in *Tunkl*]; accord, *Westlye v. Look Sports, Inc.* (1993) 17 Cal.App.4th 1715, 1735 ["ski industry … is not subject to comprehensive public regulation"]; *Hulsey v. Elsinore Parachute Center* (1985) 168 Cal.App.3d 333, 342 ["parachute jumping is not subject to the same level of public regulation as is the delivery of medical and hospital services"]; cf. *Gardner v. Downtown Porsche Audi* (1986) 180 Cal.App.3d 714, 718 [automobile repair service suitable for public regulation because licensed by the state and regulated by state agency].)

Though plaintiff cites local ordinances that regulate *aspects* of the speedway's business, nothing indicates the speedway itself is subject to a comprehensive regulatory scheme like the banking, healthcare, childcare, or other essential industries. We doubt the government's general interests in regulating alcohol service, health, and safety— interests applicable to numerous businesses and not only automobile racetracks—is sufficient to indicate the speedway is itself thought suitable for public regulation. We conclude defendants' business is not thought suitable for public regulation as meant by *Tunkl*.

Plaintiff does not analyze the remaining four *Tunkl* factors. We decline to accept plaintiff's conclusory argument that "[t]he present situation exhibits all of the four remaining *Tunkl* factors," and that "[p]laintiff's argument under *Tunkl* satisfies all of the six factors …." (See Cal. Rules of Court, rule 8.204(a)(1)(B) [briefs must "support each point by argument and, if possible, by citation of authority"]; *Benach v. County of Los Angeles* (2007) 149 Cal.App.4th 836, 852 [assertion of a point absent "reasoned argument and citations to authority" results in waiver].)

We conclude the release does not involve a transaction that affects the public interest.  The release's enforcement does not contravene public policy.[10]

## III. Gross Negligence and Wanton or Reckless Conduct

Although not specifically raised on appeal, out of an abundance of caution, we requested supplemental briefing regarding whether plaintiff pled a theory of gross negligence and whether that theory was or was not subject to defendants' motion for summary judgment.  Upon further consideration, we find that (1) defendants adequately raised a complete defense based on the signed release of liability to all theories of negligence alleged in the complaint, and (2) plaintiff failed to rebut that defense in opposition to defendants' motion for summary judgment.

### A. Background

The request for supplemental briefing explained the relevant background of the issue as follows:

> "Paragraph 36 appears under the heading, 'GENERAL ALLEGATIONS,' and alleges (1) defendants allowed, condoned, or encouraged physical altercations among drivers, racing teams, and patrons at the speedway, including the pit area, to make it part of the entertainment and thrill of the show and (2) 'such conduct was in **reckless disregard** to the safety of the public, including without limitation, those at the BAKERSFIELD SPEEDWAY PROPERTY[.]  (Boldface added.)

> "Paragraph 75 appears under the heading, 'SECOND CAUSE OF ACTION [¶] Premises Liability,' and alleges defendants 'proximately caused damages to Plaintiff by negligently, **wantonly**, and **recklessly**' operating the property; instructing others regarding patrolling, security and operation of the property; failing to protect patrons, guests and spectators; and conducting themselves so as to cause the property to be in a dangerous and unsafe condition.  (Boldface added.)

---

[10]Plaintiff raises other arguments on appeal addressing the alternative grounds for summary judgment raised by defendants' motion.  Because the release covers plaintiff's negligence claims and is enforceable, we need not address the merits of plaintiff's other arguments.

34.

"Despite the allegations that defendants' conduct was reckless and wanton conduct, defendants' moving papers did not address either theory of relief. (See Cal. Rules of Court, rule 3.1350(d)(1) [what a separate statement must identify].) Similarly, plaintiff's opposition papers did not argue summary judgment was inappropriate because the moving papers did not address all theories for relief contemplated by his complaint. At the motion hearing, plaintiff's counsel argued for the first time that the motion did not reach gross negligence. Defense counsel asserted that was the first time in the case the words 'gross negligence' had been mentioned together. The trial court agreed, rejecting plaintiff's gross negligence argument because it 'was not alleged in the complaint and was not mentioned in opposition to the motion for summary judgment.' At the hearing, the trial court said it was not timely to bring up gross negligence at that point. Plaintiff's appellate briefing did not raise the issues of gross negligence, reckless conduct, or wanton conduct.

"When answering the questions, consider whether gross negligence, recklessness, and wantonness identify different levels of culpability under California tort law. (See e.g., *[Santa Barbara, supra,]* 41 Cal.4th 747, 754, fn. 4 and accompanying text; *Brown v. El Dorado Union High School Dist.* (2022) 76 Cal.App.5th 1003, 1028 [gross negligence falls short of reckless disregard of consequences].)"

## B.    Analysis

Resolving the issues raised in the parties' supplemental briefing requires determining whether (1) plaintiff had the burden to rebut defendants' assertion of the release as a complete defense to plaintiff's negligence claims, or (2) defendants had the initial burden in moving for summary judgment to address plaintiff's allegations of gross negligence and wanton or reckless conduct in the complaint. We conclude plaintiff had the burden to rebut defendants' complete defense based on the release but failed to carry that burden.

Generally, a release, like the one here, is insufficient as a matter of public policy to preclude liability for gross negligence or other degrees of negligence beyond ordinary negligence, i.e., wanton conduct or conduct committed with reckless disregard of the consequences. (*Santa Barbara*, *supra*, 41 Cal.4th at p. 751 ["an agreement made in the

context of sports or recreational programs or services, purporting to release liability for future gross negligence, generally is unenforceable as a matter of public policy"].)

Gross negligence means "either a "'"want of even scant care"'" or "'"an extreme departure from the ordinary standard of conduct.'"'" (*Santa Barbara*, *supra*, 41 Cal.4th at p. 754.) It "'falls short of a reckless disregard of consequences and differs from ordinary negligence only in degree, and not in kind.'" (*Gore v. Board of Medical Quality Assurance* (1980) 110 Cal.App.3d 184, 197.) Thus, there is no separate cause of action for gross negligence; it is a degree of ordinary negligence. (*Hass v. RhodyCo Productions* (2018) 26 Cal.App.5th 11, 32 (*Hass*) [noting that, in *Santa Barbara*, "the Supreme Court did not definitively resolve [whether gross negligence is a separate cause of action], commenting only that it did not view its holding invalidating releases for future gross negligence 'as recognizing a cause of action for gross negligence'"].)

### 1.      *Shifting Burdens*

Importantly, in *Santa Barbara*, the Supreme Court stated, "Our holding simply imposes a limitation on the defense that is provided by a release. A plaintiff is not required to anticipate such a defense [citation]; instead, the defendant bears the burden of raising the defense and establishing the validity of a release as applied to the case at hand." (*Santa Barbara*, *supra*, 41 Cal.4th at p. 780, fn. 58.) Thus, a plaintiff is not required to allege gross negligence in a complaint.

However, a plaintiff *can* allege gross negligence in a complaint. Consider *Westlye v. Look Sports, Inc.*, *supra*, 17 Cal.App.4th 1715 (*Westlye*). *Westlye* concerned the unconscionability of a release. A plaintiff sued a ski rental company for negligence in adjusting ski bindings that caused the plaintiff's injury. The company moved for summary judgment on the grounds that the plaintiff's negligence claims were barred by an express written release of liability plaintiff signed. In explaining the plaintiff's burden to raise the issue of a release's unenforceability, the appellate court stated that "[h]ad

plaintiff anticipated the defense of the release agreement in his complaint and alleged facts suggesting [its invalidity], the matter would have been a material issue which defendants would have had to refute in order to obtain summary adjudication." (*Id*. at pp. 1739–1740; see *id*. at p. 1740 ["'If … the plaintiff pleads several theories or anticipates affirmative defenses by a show of excusing events or conditions, the challenge to the opponent is made by the complaint, requiring the moving defendant to affirmatively react to each theory *and* excusing or justifying event, or condition which supports a theory, if the motion is to be successful'"].)  In that case, the court concluded that "[s]ince plaintiff's complaint said nothing about the agreement, the matter of [its validity] was not a material issue for purposes of defendants' initial showing on its motion for summary adjudication.  [The defendant] met its initial burden by adducing evidence of the … agreement and plaintiff's execution.  The burden thereafter shifted to plaintiff to raise a triable issue of material fact." (*Id*. at p. 1740.)

*Hass* drew similar conclusions about a plaintiff's burden.  *Hass* involved the tragic cardiac arrest, collapse, and death of a runner after finishing a half marathon race.  (*Hass*, *supra*, 26 Cal.App.5th at p. 17.)  The deceased's family, the plaintiffs, alleged various negligent organization and management of the race and provision of emergency medical services.  (*Ibid*.)  The trial court initially granted the defendant summary judgment under theories of primary assumption of risk and express waiver based on the defendant's showing of a release executed by the decedent.  (*Ibid*.)  But the court reversed itself after the plaintiffs brought a motion for new trial.  The court ruled the plaintiffs should be allowed to amend their complaint to plead gross negligence:  conduct falling outside the scope of the written waiver and release.  (*Ibid*.)  The appellate court reversed.  Relevant here, the court determined that the court erred in granting leave to amend to plead gross negligence because gross negligence need not be pled in the complaint.  (*Id*. at p. 18.)

Relying on *Westlye*, *Hass* explained that although the plaintiffs "set forth certain facts in the Complaint which could be viewed as supporting a claim of gross negligence,

it cannot be said that the Complaint— which does not even mention the Release— anticipated the Release defense or raised gross negligence as a material issue which [the defendant] was required to refute in order to succeed on summary judgment. Instead, [the defendant] met its initial burden by producing evidence of the existence of the Release and its execution by [the decedent]. The burden then shifted to [the plaintiffs] to raise a triable issue of material fact as to gross negligence." (*Hass*, *supra*, 26 Cal.App.5th at p. 33.)

In *Hass*, the court observed that the plaintiffs did not need to plead gross negligence to properly raise it as a defense to the release's waiver of liability. Rather, because the plaintiffs raised the theory of gross negligence *in opposition to the motion for summary judgment*, the only question was whether the plaintiffs showed a triable issue of material fact on that theory of liability. (*Hass*, *supra*, 26 Cal.App.5th at p. 32.)

Given these authorities, two distinct pleading situations arise that shift the burden on summary judgment: (1) a plaintiff pleads gross negligence in the complaint in anticipation of a release defense, in which case the defendant must address that theory in moving for summary judgment, or (2) a plaintiff does not plead gross negligence in the complaint in anticipation of a defense of waiver via a release, in which case the plaintiff must raise the theory of gross negligence in opposition to the defendant's motion for summary judgment.

Here, we find plaintiff did not adequately plead gross negligence in anticipation of the release. In analyzing whether plaintiff pled gross negligence in anticipation of a release, both courts in *Hass* and *Westlye* observed that, even though a complaint may allege facts supporting a claim of gross negligence, the failure to mention the release in the complaint indicates that gross negligence was not a material issue raised by the pleadings. (*Hass*, *supra*, 26 Cal.App.5th at p. 33; *Westlye*, *supra*, 17 Cal.App.4th at p. 1740 ["Since plaintiff's complaint said nothing about the agreement, the matter of adhesiveness/unconscionability was not a material issue for purposes of defendants'

initial showing on its motion for summary adjudication.  [Defendant] met its initial burden by adducing evidence of the rental agreement and plaintiff's execution"].)

Though plaintiff used words like "wanton" and "reckless" in the complaint indicating an alleged greater degree of negligence than ordinary negligence (see *Santa Barbara*, *supra*, 41 Cal.4th at p. 754, fn. 4 ["'wanton' or 'reckless' misconduct … describes conduct by a person who may have no intent to cause harm, but who intentionally performs an act so unreasonable and dangerous that he or she knows or should know it is highly probable that harm will result"]), whether plaintiff's bare reference to these legal terms implicated theories of wanton or reckless conduct or gross negligence, any use of these terms failed to create a separate cause of action.  Nor can we conclude that they were pled in anticipation of the release at issue where the complaint does not mention or anticipate the release.

This fact is important.  "'A defendant moving for summary judgment has the burden of showing that a cause of action lacks merit because one or more elements of the cause of action cannot be established or *there is a complete defense to that cause of action*.'"  (*Kim v. County of Monterey* (2019) 43 Cal.App.5th 312, 323, italics added.)  Defendants moved for summary judgment on the basis that "[t]he contractual express assumption of the risk and waiver and release signed by plaintiff … is *a complete defense to his negligence-based claims* …."[11]  (Italics added.)  Because there is no separate cause of action for gross negligence (or wanton or reckless conduct), plaintiff's use of words like "reckless disregard" and "wanton" do not alter the fact that his cause of action was

_____

[11]Though we noted previously that a release is not technically a defense but rather an "express assumption of the risk that negates the defendant's duty of care, an element of the plaintiff's case" (see *Eriksson v. Nunnink*, *supra*, 233 Cal.App.4th at p. 719), defendants introduced the release to completely negate that they owed plaintiff any duty under any theory of negligence raised in the complaint.  Put differently, because a release cannot alleviate defendants' duty to refrain from gross negligence or reckless or wanton conduct, by raising the release to negate the duty element of plaintiff's claims, defendants were challenging any assertion by plaintiff that defendants acted with gross negligence or wanton or reckless disregard.

39.

for negligence.  By moving based on a *complete defense* to plaintiff's "negligence-based claims," which would definitionally include gross negligence and wanton and reckless conduct as degrees of negligence, defendants asserted waiver as a *complete defense* to all these theories.

Put differently, defendants' challenge to plaintiff's "negligence-based claims" included, by definition, any alleged gross negligence and wanton and reckless conduct. By asserting the release as a "complete defense," defendants challenged plaintiff to demonstrate the release was not a complete defense, i.e., that it was unenforceable as to defendants' allegedly grossly negligent or wanton and reckless conduct.  Given defendants' evidentiary production of the release as a complete defense to plaintiff's "negligence-based claims," the burden shifted to plaintiff to demonstrate a triable issue of material fact that defendants committed gross negligence, i.e., conduct not covered by the release as a matter of public policy.

### 2.    *Failure to Rebut Defendants' Complete Defense of Waiver*

Plaintiff did not properly raise this argument below or on appeal.  Plaintiff's opposition to defendant's motion for summary judgment contains no argument that the release is unenforceable as a matter of public policy, much less that defendants' conduct constituted gross negligence rendering the release inapplicable.

Plaintiff's opposing statement of additional material facts did not raise gross negligence or the unenforceability of the release for violation of public policy as issues.[12] Plaintiff first mentioned "gross negligence" to the trial court at oral argument, which was

---

[12]Plaintiff raised the following issues:  (1) whether the conduct resulting in plaintiff's injury was "reasonably related to the purpose of the Release that [plaintiff] signed," (2) whether defendants had "a duty to provide adequate security" in the raceway pits, (3) whether defendants demonstrated there was "no evidence from which a reasonable jury could find that the Moving Defendants' conduct was a substantial factor in causing [plaintiff's] injuries," (4) whether defendants met "their burden to show that the serving of alcohol was not a proximate cause of [plaintiff's] injuries," and (5) whether defendants were "negligent in the hiring, retention, supervision, and training of their security personnel."

40.

untimely and procedurally unfair to defendants.[13] (*New Plumbing Contractors, Inc. v. Nationwide Mutual Ins. Co.* (1992) 7 Cal.App.4th 1088, 1098 ["[n]ew issues cannot generally be raised for the first time in oral argument"]; accord, *People v. Grimes* (2015) 60 Cal.4th 729, 757; see also *Varjabedian v. City of Madera* (1977) 20 Cal.3d 285, 295, fn. 11 ["[o]bvious reasons of fairness militate against consideration of an issue raised initially in the reply brief of an appellant"].)

Given we conclude plaintiff failed to adequately raise the issue of gross negligence or wanton or reckless conduct in the complaint in anticipation of the release, plaintiff could not successfully resist summary judgment on a theory neither pled nor argued in his opposition papers but instead raised for the first time at the summary judgment motion hearing. (*Bosetti v. United States Life Ins. Co. in City of New York* (2009) 175 Cal.App.4th 1208, 1225 ["'[t]he complaint serves to delimit the scope of the issues before the court on a motion for summary judgment [citation], and a party cannot successfully resist summary judgment on a theory not pleaded'"]; see also *Olson v. La Jolla Neurological Associates* (2022) 85 Cal.App.5th 723, 739 [theory not raised in appellant's opposition to summary judgment forfeited].)

Though we requested supplemental briefing to address, in part, whether there might be an error we must address, we conclude there was no error: plaintiff bore the burden to rebut defendants' complete defense based on waiver, including by arguing, and showing a triable issue of fact regarding, defendants' conduct as constituting gross

---

[13]On this point, the supplemental briefing request asked if the trial court erred "by concluding California's rules of pleading required gross negligence to be explicitly alleged." This was not exactly the court's conclusion. The court denied the gross negligence theory "on the basis that no such cause of action was pled and on the basis that Plaintiff[] did not raise this issue in the opposition to the motion." Though the court erred in stating that gross negligence is a "cause of action," the court, in essence, captured the pleading dynamic: either plaintiff needed to plead gross negligence or oppose the release, as a complete defense to plaintiff's claims, in his opposition. Therefore, the court did not err. The reference to gross negligence as a "cause of action" is a harmless error.

negligence or wanton or reckless conduct.  Plaintiff's failure to raise those theories below means he failed to meet his burden to oppose the release on these grounds.  The trial court did not err when it rejected plaintiff's belated attempt to raise the theory of gross negligence in opposition to defendants' motion for summary judgment.

## DISPOSITION

The judgment is affirmed.  Defendants shall recover their costs on appeal.


PEÑA, J.

WE CONCUR:


DETJEN, Acting P. J.


SMITH, J.

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| ZACKARY DIAMOND, as represented, etc.,<br><br>Plaintiff and Appellant,<br><br>v.<br><br>SCOTT SCHWEITZER et al.,<br><br>Defendants and Respondents. | F086150<br><br>(Super. Ct. No. BCV-20-100707)<br><br>**ORDER MODIFYING OPINION,<br>CERTIFYING OPINION FOR<br>PARTIAL PUBLICATION**<br>[NO CHANGE IN JUDGMENT] |

**THE COURT:**

It is ordered that the opinion filed herein on March 24, 2025, be modified as follows:

1. On page 26, in the first full paragraph, the last sentence beginning "In sum" is deleted and the following sentence is inserted in its place:

In sum, a reference to all acts of negligence is a sufficiently explicit expression of the parties' intent.

2. On page 27, the first sentence of the first full paragraph is modified to read as follows:

Defendants' alleged negligence in providing security at the racing events on June 9, 2018, is reasonably related to the release's purpose, which was to avoid liability for negligence and thereby decrease the cost of operating the business.

3. At the end of the last paragraph on page 27, add the following sentences:

Similarly, as applied here to defendants, the injury also related to the additional purpose or object of the release: to avoid liability for any negligence on its part during the race on its premises. This mutual intent is clearly expressed in the words of the release. As such, each side was aware of the other's reasons for the release, which created a mutuality of intent.

4. In the last paragraph on page 28, the third sentence beginning "Second, defendants' release" and continuing to the top of page 29 is modified to read as follows:

Second, defendants' release covered all liability for any harm arising out of or related to the event, and the releasor's—i.e., plaintiff's—entry to a restricted area for "'any purpose.'"

In the partial paragraph at the top of page 29, the fourth full sentence beginning "But defendants' release" is deleted and the following sentence inserted in its place:

Here, on the other hand, defendants' release relates the harm incurred from negligent conduct broadly: arising from or relating to the events.

5. On page 31, in the first sentence of the first full paragraph, the word "releasee" is changed to "releasor" so the sentence reads:

Put differently, *Tunkl*'s analysis of whether a release affects the public interest is focused, in important part, on the position the releasor is placed in.

There is no change in the judgment.

The opinion in the above-entitled matter filed on March 24, 2025, was not certified for publication in the Official Reports. For good cause it now appears that the opinion should be published in the Official Reports with the exception of part III of Discussion and it is so ordered.


PEÑA, J.

WE CONCUR:


DETJEN, Acting P. J.


SMITH, J.


2.